WILLIAM R. TURNER, PLAINTIFF IN ERROR, V. SAMUEL O'BRIEN, DEFENDANT IN ERROR.

1. **Malicious Prosecution:** EVIDENCE. The defendant, in an action for malicious prosecution, alleged in justification that he was the owner of grain purchased at sheriff's sale, and that plaintiff knowing this, took a portion thereof, threshed, and hauled it away, and that defendant upon the advice of a competent attorney caused the arrest of plaintiff for larceny. It appeared in evidence that after the defendant had purchased the grain and commenced its threshing, he was stopped by an injunction issued in behalf of another party claiming to be the rightful owner, who employed the plaintiff to thresh and store it, upon the doing of which defendant had caused his arrest. *Held*, 1. That the petition, injunction bond, report of referee, and receiver's bond in the injunction suit, as well as evidence of the plaintiff in that suit concerning it, were inadmissible. 2. That testimony of plaintiff offered to prove that he "acted in good faith in threshing the grain, and without intent to steal the same," was properly excluded. 3. That testimony offered to show that defendant did not call on plaintiff or the defendant in execution, whose grain he had purchased, and make inquiries of them concerning it, was no evidence of bad faith on his part, and inadmissible. 4. That to entitle plaintiff to recover he must prove not only malice but want of probable cause by the defendant in causing his arrest.

2.  **Practice:**  INSTRUCTIONS TO JURY.  The assumption by the court in its charge to the jury of a fact of which there is no evidence is error.

ERROR to the district court of Dodge county.  It was an action by Turner against O'Brien to recover damages for causing the said Turner to be arrested and imprisoned on a charge of grand larceny.  The defendant alleged in justification that he was the owner of grain purchased at sheriff's sale, and that plaintiff knowing this, took a portion thereof, threshed, and hauled it away, and that defendant upon advice of a competent attorney caused the arrest and imprisonment of plaintiff.  It appeared in evidence that after O'Brien had purchased the grain and commenced its threshing, he was stopped by an injunction issued in the case of Brown against O'Brien (4 Neb., 195), Brown claiming to be the rightful owner, who employed the plaintiff in this suit to thresh and store the grain, upon the doing of which defendant had caused his arrest. The case came up here in 1877, and is reported in 5 Neb., 542.  The present trial, before POST, J., and a jury, resulted in a verdict for defendant, and Turner again brought the cause up for review upon a petition in error.

*N. H. Bell,* for plaintiff in error, cited 2 Greenleaf on Ev., sec. 455.  *Merriam v. Mitchell,* 13 Me., 439. *Stevens v. Fasset,* 27 Id., 266.

*W. A. Marlow,* for defendant in error.

COBB, J.

The plaintiff in error presents eight points in his petition in error.

"1.  That the court erred in excluding from the jury, as evidence for the plaintiff, the injunction bond

given by James D. Brown in the suit of said Brown against defendant O'Brien et al."

I cannot conceive how the injunction bond could have properly been admitted as evidence in the case. The grain having been taken away by Turner, who acted for Brown and under his employment, Brown, and probably Turner also, was liable to O'Brien for its value in case he was successful in the suit in equity which was brought to test the ownership of the grain. They were both responsible. But suppose the grain had been stolen by some unknown person, would the sureties on the injunction bond have been holden for the value of it? I think not. "In estimating damages sustained by the improper issuing of an injunction * * * it may be said generally that nothing will be allowed which is not the actual, natural, and proximate result of the wrong committed. * * * In other words the liability upon the injunction bond is limited to such damages as arise from the suspension or invasion of vested legal rights by the injunction. Speculative and remote damages are not properly allowable, nor are those which are merely consequential, the limit being such damages as flow directly from the injunction as its immediate consequence." High on Injunc., sec. 964, and authorities there cited. Therefore I do not think the injunction bond was any security to O'Brien against the loss of said grain by theft or trespass; nor that he should by reason of it have relaxed in the least in his vigilant care of said property. If I am not wrong in this view then the existence of said bond was entirely inconsequential, so far as the issue in this case was concerned, and it was quite irrelevant as evidence.

"2. The court erred in excluding from the jury the testimony of Wm. R. Turner and Thomas M. Boyer, offered by plaintiff in rebuttal, and tending to show

that both Turner and Boyer lived in the vicinity of the place where the grain was threshed, for the threshing and hauling away of which they were arrested, and tending to show that defendant O'Brien, in going to the neighborhood where the threshing was done, would necessarily pass close by Turner's and Boyer's houses, and to show that he did not call on Turner nor Boyer, nor ask any explanation of them or either of them as to who had done the threshing or why it was done."

It is claimed by the plaintiff in error in his brief, that the testimony referred to under this head would tend to show that O'Brien did not act in good faith, otherwise he would have called on Turner and Boyer and made inquiries of them as to what had become of the grain.    It appears to me that in order to take that view we must first assume that O'Brien was merely acting a part; then, in order to overcome that assumption, we might say that he ought to have inquired of everybody in the neighborhood, including Turner and Boyer.    But viewing the matter without such an assumption, and considering O'Brien's own testimony on that subject, it does not appear that his failure to call on Turner and Boyer, or to make inquiries of them, was any evidence of bad faith on the part of O'Brien whatever.    He had learned from Irvin and Compton, about the middle of October, that Turner and Boyer were threshing the grain, and that Turner claimed to have been appointed receiver, and had given $1,500 bonds.    Two or three days after that he saw Turner himself, who informed him that he was threshing out the grain, and that it was turning out well.    So there could have been no occasion for his calling upon Mr. Turner at his residence, nor upon Boyer, to inquire as to who had taken the grain away. Nor do I think it any evidence of bad faith on his part that he did not call on them to inquire by what au-

thority they had taken it.    He knew that they had no
authority from him, and he knew that Turner had au-
thority from Brown, his opponent in litigation over
the ownership and possession of the grain, and I think
that it was no evidence of bad faith on his part that
he did not apply for information on the subject to the
employer of his opponent.

"3.    The court erred in not allowing the plaintiff
Turner to testify, as he offered to do, that in threshing
the grain he acted in good faith, and without intent to
steal the same, and as the agent of Dennis, receiver."

The question of Turner's good faith in threshing
the grain was not before the jury.    That he was not
guilty of larceny, the crime for which he was prose-
cuted, was established by his discharge by order of
the court in Washington county upon the failure of
the grand jury to indict him, and no further inquiry
on that point was necessary or proper.    His method
of threshing and hauling the grain, whether done in
an open and public manner, as tending to show the
want of good faith on the part of O'Brien in charging
him with having stolen it, was pertinent and proper to
be proved, but the secret intent of Turner in thresh-
ing and removing the grain is irrelevant in this case.

"4.    The court erred in excluding from the jury
the two receiver's bonds offered by the plaintiff."

One of the bonds above referred to was approved
and filed February 14, the other May 16, 1873.    The
information against Turner and Boyer before the jus-
tice was filed by O'Brien January 14, 1873.    The said
receiver's bonds had no existence at that time, nor at
the date of the alleged conversion of the grain, and so
could not have been considered by O'Brien in making
up his mind as to the right of Turner to remove the
grain, or as to the intent with which it was removed
if he had no right; and as the main questions before

the district court in this case were whether there was probable cause for making the said information and whether the same was made maliciously, I think that the said receiver's bonds were properly excluded.

"5. The court erred in admitting in evidence on behalf of defendant O'Brien, the answer, summons, report of the referee, and journal entry in the case of James D. Brown v. Samuel O'Brien et al."

The said answer was filed on the 17th of May, 1873; the report of the referee was filed on the 12th December, 1873; and the journal entry made April 30, 1874, all of which dates are long subsequent to that of the criminal prosecution, which is the cause of action in this case. I do not see how they could possibly shed any light for the guidance of the jury upon the questions at issue. Whatever facts were alleged in the answer found by the referee and affirmed by the judgment of the court, might or might not be material in the case if proved by competent testimony, but they could not, as I understand the rule of evidence, be proved by the said records in a suit between these parties. And I think that probably this testimony was prejudicial to the plaintiff. As claimed by plaintiff in his brief, it presented a new and false issue to the jury, distracted their minds from the real one, and may have misled them in reaching the conclusion to which they arrived in this case. For these reasons I think there should be a new trial.

"6. The court erred in admitting in evidence on behalf of defendant O'Brien the answer to the cross-interrogatory No. 1, in the deposition of James D. Brown."

The plaintiff took the deposition of James D. Brown and examined him upon certain points in his answer to which he necessarily spoke of the suit which he had instituted in equity against O'Brien and others concern-

ing the grain in question, and in which the injunction was issued. On cross-examination the counsel for defendant put but one question to the witness, which was as follows:

"Q. This suit of yours against O'Brien in the district court of Dodge county in regard to the title of the grain in controversy was decided against you in that court, was it not?" Under objection on the part of the plaintiff, witness answered: "It was, and has been appealed to the supreme court."

We have already seen, while examining this question under another head, that the result of the suit between Brown and O'Brien et al. could not have affected the good or bad faith with which the criminal prosecution, for which this suit was brought, was instituted by the defendant O'Brien. And while I think the question and answer now under consideration as entirely irrelevant, the answer may have been, and probably was, regarded by the jury as important, and taken in connection with the record evidence in that case, which I have heretofore discussed as having been improperly admitted, it probably led the jury to a consideration of the issues involved in that case, to the exclusion of those of the case which they were then trying.

Two of the remaining points deemed proper to notice, urged by the plaintiff, arise upon the instructions given in charge to the jury, and those prayed by the plaintiff, but refused.

The eighth instruction is, I think, open to the objection urged against it by counsel. It does assume that there is evidence before the jury from which they might find "that at the time the defendant commenced the prosecution against the plaintiff Turner, on the charge of larceny before the magistrate, he had been informed that the plaintiff Turner, either alone or with

others, had committed or was at that time committing larceny upon the grain of defendant O'Brien," etc., when in fact there was no evidence that such facts had been communicated to him. He had been informed that plaintiff, with others, were threshing out and hauling away the grain, and that Turner had been appointed receiver, given bond, etc. He was afterwards informed that Turner had not been appointed receiver. The point is that the charge leaves the jury to infer that the court considered these facts, put together, as equivalent to information that the defendant had committed or was committing larceny upon the wheat, etc.

When this case was before this court on error from a former trial, the court in the opinion said: "It is the duty of the court to determine whether such fact, if found, constituted probable cause or a reasonable ground of suspicion, sufficient to warrant a cautious man in the belief that the plaintiff was guilty of larceny; and it was error to submit this question to the jury." *Turner v. O'Brien*, 5 Neb., 542.

There is no material conflict of testimony in this case on the point of probable cause, and that being the case I think that the court should have told the jury whether such testimony was sufficient to show probable cause or not.

I cannot agree with counsel for the plaintiff in his views upon his request No. 4, refused by the court. The portion of the charge insisted on by the plaintiff is in the following words: "And it is not sufficient that O'Brien really believed that a crime had been committed when, in truth, the facts within his knowledge constituted no crime. Good faith merely is not sufficient to protect defendant O'Brien from liability, for good faith merely, may be based on mere conjecture or unfounded suspicion supported by no circumstances. The belief or suspicions must be reasonable.

Such as would be entertained by a cautious and prudent man."

The substance of the above is inconsistent with the first charge given by the court, as well as with No. 1 of the charge prayed by plaintiff, which agree in this, that to entitle the plaintiff to recover he must prove two things—or that two things are essential—malice and want of probable cause. In one of the charges the court defines malice to be the opposite of good faith, and I see no objection to that definition. But if we admit good faith we thereby admit the absence of one of these essential things—malice. The two cannot exist together.

The only other remaining point urged by the plaintiff is, that the evidence does not sustain the verdict. As for reasons above stated I have reached the conclusion that there must be a new trial, I express no opinion on this point.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.