JOHN CASEBEER AND MARY DRAHOBLE, PLAINTIFFS IN ERROR, V. CHARLES P. RICE ET AL., DEFENDANTS IN ERROR.

1. **Malicious Prosecution.** In a case of malicious prosecution the right of action accrues whenever the criminal prosecution is disposed of in such a manner that it can not be revived, and the prosecutor, if he proceeds further, will be put to a new one. *Casebeer v. Drahoble*, 13 Neb., 465.

2. **Jury Judge of Fact.** Questions of fact, and upon conflicting testimony, are to be decided by the trial jury, and a verdict will not be set aside on the ground of a want of sufficient evidence to support it unless the want is so great as to show that the verdict is manifestly wrong. *Sycamore Marsh Harvester Co. v. Grundrad*, 16 Neb., 529.

3. **Malicious Prosecution:** PROBABLE CAUSE: PROOF OF MALICE. A person in the lawful possession of property, either real or personal, may by force defend against an unlawful invasion of his rights, if such invasion is by force and violence, *providing* such resistance is necessary to the protection of such rights, and *provided* such resistance is within proper bounds, and does not become aggressive. And where in such case the person making the unlawful attack causes the person attacked to be arrested for a crime in making such defense, such arrest will be without probable cause, and if caused with the intent and purpose of wrongfully injuring the person arrested, it will be held sufficient proof of malice.

4. **False Imprisonment:** EVIDENCE: MALICE. In an action of false imprisonment it is incumbent upon the plaintiff to prove by a preponderance of testimony that the criminal prosecution was without probable cause and was malicious. But where the

want of probable cause, is clearly shown, and all the facts and circumstances of the case are before the jury, they may find from the facts showing a want of probable cause, that the prosecution was malicious.

5. ——: PROBABLE CAUSE: MALICE.    While ordinarily the question of what constitutes probable cause for a criminal prosecution does not depend necessarily upon whether the offense has, in fact, been committed, nor whether the accused is innocent or guilty, yet where before the commencement of a criminal prosecution the promoters of such prosecution were possessed of full knowledge of all the real facts in the case, and knew that the party charged was not guilty of the alleged offense, proof of the real facts in the case may be made for the purpose of showing a want of probable cause and malice.

ERROR to the district court for Gage county.    Tried below before DAVIDSON, J.

G. M. O'Brien and J. E. Bush, for plaintiffs in error, on first point, cited: 2 Addison on Torts, 759.    Bacon v. Town, 43 Cushing, 217.    Parker v. Farley, 107 Cushing, 482.    Cardival v. Smith, 100 Mass., 159.    Dreggs v. Burton, 44 Vermont, 124.    On fourth instruction, cited: 2 Hilliard on Torts, 469, Chap. 16, § 246b.    Harpham v. Whitney, 77 Ill., 32.    Ewing v. Sandford, 19 Ala., 605.

L. M. Pemberton, and A. H. Babcock, for defendants in error, on fourth instruction, cited: 1 Hill. on Torts, 191.    Cooley on Torts, 167.    2 Add. on Torts, 693.    Desty Am. Cr. Law, § 130m.    Scribner v. Beach, 4 Denio, 448.    Parsons v. Brown, 15 Barb., 590.    Cerey v. The People, 45 Id., 262.    Merriam v. Mitchell, 13 Me., 439.    Shaul v. Brown, 28 Iowa, 37.

REESE, J.

From the record and pleadings in the cause it appears that on or about the 29th of October, 1880, the defendants in error were arrested upon a criminal charge made against them before the county judge of Gage county.    The crime

charged by the complaint was that of an unlawful assembly or, perhaps, what is denominated "rout." The complaint was signed and sworn to by Mathias Drahoble, the husband of one of plaintiffs in error. Such proceedings were had as resulted in a dismissal of the cause and the discharge of the accused by reason of the failure of the prosecution to give security for costs. Defendants in error then brought suit in separate actions, alleging damages sustained by reason of the arrest, etc., and that the prosecution was malicious. and without probable cause. Averments are made in the petitions charging both of plaintiffs in error with causing the arrest.

Plaintiffs in error filed separate answers, Mary Drahoble denying generally the allegations of the petitions, and John Casebeer admitting the prosecution, but denying any connection with it. By agreement the causes were tried together. The jury found for defendants in error, and returned verdicts assessing Rice's damages at $102, and M. Candace Casebeer's at $200. Defendants in that case prosecute error to this court.

The first contention is, that the dismissal of the criminal prosecution was not such a final determination thereof as would entitle defendants in error to recover. While there are some cases which seem to hold with plaintiffs in error upon that point, yet we deem it well settled by the great weight of authority that there was such a final termination of the prosecution as would enable defendants in error to maintain their action if the prosecution was found to be malicious and without probable cause. In *Casebeer v. Drahoble*, 13 Neb., 465, it was held that the right of action accrues " whenever the particular prosecution be disposed of in such a manner that this (it) cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one."

It is next insisted that neither of the plaintiffs in error had anything to do with the criminal prosecution and are

therefore in no way responsible for the same, nor in any sense liable in this action, even if the prosecution was malicious and without probable cause.    Upon this branch of the case there was a direct conflict of testimony.    The rule is well settled in this court that in such cases the verdict will not be molested unless the preponderance of the testimony is so clearly against it as to satisfy the mind that it is clearly and manifestly wrong.    *Sycamore Marsh Harvester Co. v. Grundrad,* 16 Neb., 537.    Applying this rule to the case at bar, we are to inquire whether or not there was sufficient testimony upon this point to sustain the verdict.

Hon. J. E. Cobbey, the county judge before whom the criminal prosecution was conducted, was called as a witness on the part of defendants in error, and after the preliminary proof of signatures, etc., to certain files and records had been made, he is asked to state who filed the complaint with him.    His answer was, " Why, Mrs. Drahoble filed it, I think—that is, handed it to me.    It was not sworn to before me, but it was handed to me by Mrs. Drahoble, as I remember it."    As there is evidently a want of agreement between counsel as to the effect of Judge Cobbey's testimony, we copy that part bearing upon this question, omitting all questions the objections to which were sustained :

Q.    Was it handed to you by Mathias Drahoble?

A.    It was not handed to me by a man.

Q.    State whether it was handed you by a man or woman.

A.    It was handed to me by a woman.

Q.    You may state what John Casebeer and Mary Drahoble did about this prosecution which has been introduced in evidence.

A.    I think it was in the morning ; Mrs. Drahoble, or a woman who introduced herself as such, came in considerably agitated and flurried, and handed me a paper, saying she wanted that filed.    I looked it over a little, and while I was looking it over and making the proper entries, she told me

they were having a fearful time down there—and some got hurt—and had a fight—a big time, and went on as a woman will sometimes; said she left them to come up and see her attorney, and they decided to put a stop to it, and this was a step in putting a stop to it. She talked some time; I think she was in the office an hour, may be; I did not charge my mind with it, but she told me all about it—everything that had happened, or she thought would happen. That is about all I had to do with her. My impression is she took the warrant down to her attorney; I am not certain; I did not charge my mind with it at the time.

Q. State what, if anything, John Casebeer had to do with it.

A. I don't remember anything about John Casebeer, I think—that is, I don't remember anything in particular; he was around there during the prosecution, but I don't have any particular remembrance of him.

Q. Do you remember him ordering out a subpœna in the case for the plaintiffs?

A. I would not be positive he ordered the subpœna; it might be; the record shows somewhere; I don't remember; I have very little remembrance about it; I have an idea he did it, but I would not be positive about it.

Q. State whether or not John Casebeer was there during the proceedings at any time?

A. John Casebeer was not there that morning, but I think he was there afterwards, twice, that is what I think; he was there twice, perhaps it might have been on the same day, and I think he talked to me once about there, and another time with Colby.

Q. State whether or not he was there on the 3d day November, the time the case was finally disposed of?

A. I cannot say as to that whether he was or not. If this record shows that he was there, he was.

CROSS-EXAMINATION.

Q. Can you describe the kind of a woman that appeared at your office with that paper?

A. I think she was a large woman; rather fleshy. I don't know that I could identify her.

Q. Are you certain it was a woman handed it to you?

A. Oh, yes; there is no doubt about that.

Q. What time of day?

A. I judge about nine o'clock in the morning.

Q. Might you not be mistaken, and might not this have been the day of the trial?

A. No, sir; I am quite certain. That is the only thing in which I might be mistaken, if there was another case on this docket, started in this Casebeer matter, it might be she appeared in that and not in this.

Q. Is there no possibility of being mistaken?

A. There is always a possibility.

Q. You are not certain she appeared?

A. I am quite positive of that. I am pretty positive it was this case.

Q. If she should testify here she was in Blue Springs that day, you would still be positive?

A. If she was in Blue Springs that day, of course I am mistaken, but I think I would want considerable evidence to convince me.

Q. Is it not a fact that the party who signed that complaint never took it out of your office after it was sworn to?

A. I think it was not sworn to before me.

Q. This was 9 o'clock in the morning of the day that entry was made?

A. That is my impression. The entry don't show, but that is my impression. It was in the morning. I would not be very positive about that.

Q. You say in your examination that John Casebeer was there at the time of this examination.

A. Why, I said he was there twice, I think. I think John talked to me about it once.

Q. Was there any other parties about the court room?

A. Oh, yes; there was a number there. There has been so much of that Casebeer business.

The theory of the defendants in error is, that plaintiffs in error caused their arrest so that during the time occupied by defendants in error in going from Blue Springs to Beatrice, in charge of the officer making the arrest, plaintiffs in error could, and did, by force and violence remove defendants in error and certain personal property of Mrs. Casebeer from a house in Blue Springs (the title to the land on which it stood being held in common), and thereby by force and violence, with the aid of the arrest, accomplish what could not be brought about by peaceable methods. One W. E. Parker, a constable at Blue Springs, was called in for the purpose of protecting Mrs. Casebeer during the enforced absence of her husband, and he testified that while he was returning the personal property which had been forcibly removed from the house of defendant in error (Casebeer) he saw plaintiff in error, John Casebeer, there, who stated to the witness that the arrest was made on purpose so he could get a chance to get into that property—get possession of the property, and if he, the witness, didn't keep away, he would do the same thing with him. In addition to the testimony of the two witnesses above referred to, it was shown that soon after the arrest of defendants in error, with five others, and their removal to Beatrice, excepting Mrs. Candace Casebeer, who gave bail in Blue Springs to appear for trial, plaintiffs in error, with a concert of action which appeared to be the result of an understanding, appeared upon the premises in dispute, and by force removed the property there, turning out stock and removing household property, as well as quantities of grain, etc., until restrained by the presence of the officers, who returned the property in part;

14

and prevented further removals. It is also testified to that at the time to which the criminal prosecution was adjourned plaintiffs in error were present, although by subpœna, counseling with the attorney who conducted the prosecution, and otherwise showing an interest in the result, while defendant in error, Mrs. Casebeer, testified that plaintiffs in error stated to her that the arrest was made to enable defendants in error to get possession of the property.

While to some this testimony might not be satisfactory proof of the connection of plaintiffs in error with the criminal prosecution, yet to the jury it seems to have been satisfactory, and we cannot say there was not enough to sustain the finding. A question of fact was thus presented, which it was the special province of the jury to try. In view of the array of contradictory testimony produced upon the part of the plaintiffs in error, the writer would have perhaps found otherwise, but that is not enough to warrant a court in setting aside a verdict.

It is insisted that if the conclusion that plaintiffs in error were connected with the criminal prosecution can be sustained, it is shown that there was sufficient cause for the arrest, and the verdict must, for that reason, be set aside. We have carefully examined the testimony adduced upon that branch of the case, and are satisfied with the verdict upon that point. Giving the most liberal construction to the testimony of the witnesses for plaintiff in error, the most that could be said is, that there was a conflict and that the jury were justified in finding as they did.

Objection is made to the fourth instruction given to the jury upon the request of defendant in error. It is as follows: "If you find from the evidence that the defendants, or either of them, brought, or caused to be brought, or aided, advised, or assisted in bringing the prosecution against plaintiffs, mentioned and described in plaintiffs' petition, and that the acts and deeds of the plaintiffs which caused said prosecution to be brought were committed by plain-

tiffs in defense of property, of which either or both of them were in lawful possession, either alone or in common with any other person or persons, against the unlawful attempt of defendants to get possession thereof, and that said acts and deeds of plaintiffs were no more forcible and violent than was necessary for the protection of said property against the unlawful attempts of defendants to get possession of said property, then the court instructs you that the defendants had no probable cause for bringing said prosecution; and if you further find that said prosecution was wrongful and injurious to plaintiffs, and known and intended by defendants so to be, you will find a verdict for plaintiffs." The objection to this instruction is, that it misstated the law and left no alternative to the jury but to find a verdict in favor of defendants in error.

As we understand this instruction, and as we think it must have been understood by the jury, it amounts to no more than that if defendants in error were in the lawful possession of property, and that the acts complained of in the criminal prosecution were committed in defense thereof, and that such acts were no more forcible and violent than was necessary for the protection of such property against the unlawful attempts of plaintiffs in error to get possession, then there was no probable cause for the arrest. And if the jury further found that the prosecution was known and intended to be wrongful and injurious by plaintiffs in error, the verdict should be in favor of defendants in error.

We cannot see how this instruction can be said to misstate the law, nor how it could mislead the jury. The right of defense of person and property against the unlawful and violent invasion of either, so long as that defense is within proper bounds and does not becomes aggressive, has long been recognized, and we think no citation of authorities in its support is necessary. This being true, it must follow that in the proper and legitimate defense of one's possession no crime is committed. If, then, the attacking party

causes and procures the arrest of the other for what the complainant knows is no crime, how can it be said he had probable cause for making the arrest? Then, if in addition to the want of probable cause there is the knowledge and intention that the arrest was and should be both wrongful and injurious, this would amount to malice and the case would be made.

The rights of the parties were properly separated by the fifth instruction, and the jury were fully instructed upon that part of the case.

Plaintiffs in error requested the court to instruct the jury, "That although the plaintiffs may show the want of probable cause by a preponderance of evidence, yet it is not sufficient to support a recovery unless malice be shown also. Malice is not to be presumed but must be shown to exist, as well also as probable cause, so that the plaintiff must prove that the defendants were actuated by a malicious desire to injure him. Therefore, if the jury find from the testimony that the plaintiffs have failed to show by a preponderance of evidence that the defendants commenced the alleged criminal prosecution against him with a malicious intent to injure him you will find for the defendants."

This instruction was refused, and such refusal is assigned for error. It is insisted that the chief error of the trial court in refusing this instruction lay in the fact that the court refused to instruct the jury that malice must be proved, and is not presumed from the fact of there being a want of probable cause. While this might be conceded to be the law as applicable to prosecutions of this kind, yet it is undoubtedly the law that where a want of probable cause is clearly shown all the facts and circumstances of the case are presented to the jury, and if they be of such a character as to imply malice it will be inferred from such facts. The law does not require a plaintiff in an action of this kind to prove by direct testimony the mental condition or

purpose of a person in committing or performing an act, but the character of the act itself with all the surrounding facts and circumstances must be looked to for the purpose of ascertaining, under well-known rules applicable to human conduct, the intent and purpose of the person committing the act. But assuming that the instruction properly states the law we can not say that the court erred in refusing to give it. Plaintiffs in error requested and the court gave, with others, the following instructions bearing upon the question of malice:

"*First.* The general issue being plead in an action of malicious prosecution, the burden of proving these five facts is cast upon the plaintiff, viz.:

"1st. The fact of the prosecution.

"2d. That the defendants were the prosecutors or instigators of it.

"3d. That the prosecution terminated in favor of the plaintiffs.

"4th. That the charge was made without reasonable or probable cause.

"5th. That the defendants in making it were actuated by malice."

"*Second.* That to maintain an action for malicious prosecution the plaintiff must show by a preponderance of evidence malice and want of probable cause. Therefore, if the jury find from the testimony that the plaintiff has failed to prove by a preponderance of evidence that the defendants, maliciously and without probable cause, commenced said alleged criminal prosecution against him, you will find for the defendants."

"*Seventh.* That although the plaintiff may show the want of probable cause by the preponderance of evidence, yet it is not sufficient to support a recovery, unless malice be shown, or may be inferred also, so that the plaintiff must prove that the defendants were actuated by a malicious desire to injure him. Therefore, if the jury find from the

testimony that the plaintiff has failed to show by a preponderance of evidence that the defendants commenced the alleged criminal prosecution against him with a malicious intent to injure him, you will find for the defendants, but proof of the institution of a criminal prosecution without probable cause may be sufficient proof from which malice may be inferred."

As we understand the law applicable to the question of malice, these instructions, when applied to the testimony before the jury, contain a fair statement of it, and in substance give all the essential ingredients contained in the instruction which was refused. But it is not necessary in such cases that express malice be shown. Malice in a prosecution may be inferred from a clear want of probable cause. *Holliday v. Sterling*, 62 Mo., 321. *Newell v. Downs*, 8 Blackf., 523. *Callahan v. Caffarata*, 39 Mo., 136. *Harpham v. Whitney*, 77 Ill., 32. *Burt v. Gibbons*, 3 L. J. Exch., 75. *Mowry v. Whipple*, 8 R. I., 360. *Strauss v. Young*, 36 Md., 246. And it may be found by the jury from the same facts which show a want of probable cause. *Harkrader v. Moore*, 44 Cal., 144. *Oliver v. Pate*, 43 Ind., 132. *Ammerman v. Crosby*, 26 Ind., 451.

And if the prosecution was wholly without cause no further evidence of malice is necessary. *Hayes v. Hayman*, 20 La. An., 336. *Holburn v. Neal*, 4 Dana, Ky., 120.

It is next insisted that the court erred in permitting defendants in error to testify as to their guilt or innocence of the offense as charged in the criminal complaint. This objection may be met in brief by observing that we have been unable to find any record of a ruling upon that question by the trial court adverse to plaintiffs in error with the necessary exceptions thereto, and the further suggestion that the whole question was inquired into by both parties. But we are not prepared to say that in a case like the one at bar the investigation was not proper, even if it had been resisted by plaintiffs in error. The proof shows

that plaintiffs in error, at the time of the filing of the complaint had full knowledge of all the real facts constituting the alleged crime. It was competent for defendants in error, upon their theory of the case, to show, if they could, that no crime had been committed by them, and that plaintiffs in error knew that fact. This, if true, and of that the jury were the sole judges, would tend to show a want of probable cause, and that the prosecution was malicious.

We find no prejudicial error in the case, and the judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.