## W. N. Dreyfus v. Carrie Aul.

[Filed March 19, 1890.]

1. **Malicious Prosecution:** Right of Action: When Accrues. In a case of malicious prosecution the right of action accrues whenever the criminal prosecution is disposed of in such a manner that it cannot be revived, and the prosecutor, if he proceeds further, will be put to a new one. (*Casebeer v. Drahoble,* 13 Neb., 465 ; *Casebeer v. Rice,* 18 Id., 203.)

2. ———: Probable Cause. To entitle the plaintiff to recover in such an action he must prove a want of probable cause, malice of the defendant, and that the criminal prosecution is ended.

3. ——— : ——— : Instructions. It is the duty of the court to instruct the jury what facts constitute probable cause, and it is error not to do so.

4. ———: ———: Complainant: When Protected. Where a party before instituting a criminal prosecution makes a full, fair, and honest statement to the county attorney of all the facts bearing upon the guilt of the accused of which he has knowledge, or could have ascertained by reasonable diligence, and in good faith acts upon his advice, he cannot be held liable for malicious prosecution. If the party withholds from counsel any material facts, then such advice will not protect him.

5. ———. *Palmer v. Keith,* 16 Neb., 91, distinguished.

Error to the district court for Buffalo county. Tried below before Hamer, J.

*Marston & Nevius,* for plaintiff in error.

*Green & Hostetler, contra.*

Norval, J.

This is an action for malicious prosecution brought by the defendant in error to recover damages for causing her arrest upon a complaint charging her with having made threats to burn the buildings of plaintiff in error. The

petition is in the usual form. The answer admits the filing of the complaint, and the arrest of plaintiff in the action, but denies all malice or malicious intent and charges that he had good and reasonable grounds for making such complaint. The answer also alleges that before filing the complaint he stated all the facts and circumstances of the case to his attorneys and also to the county attorney and was by them advised that he had a good cause for making the complaint. The reply was a general denial. The cause was tried to a jury and a verdict was returned for the plaintiff in the action for $100, upon which judgment was rendered.

The first assignment of error is that the verdict is not supported by the evidence. It is urged under this assignment that there is an entire lack of testimony to establish malice and want of probable cause.

The testimony discloses that the defendant in error made the threats for which she was arrested ; that she was provoked thereto by the plaintiff in error taking under a chattel mortgage a cow claimed by her ; that the next day she informed the plaintiff in error that she regretted having made the threat, and that she never intended to carry the same into execution. It was a month after this that the prosecution was begun. There is in the record before us testimony tending to show that the prosecution was instituted maliciously and without probable cause. The defendant in error testified that she had the following conversation with the plaintiff in error :

Q. State what conversation you had with Dreyfus, if any, concerning this matter of what you had said on the following day.

A. I saw Dreyfus the next day and had a conversation with him, and I told him I would like to have the cow fetched back, and if he would do that I would never have him arrested. I told him that the cow was mine and he had no right to take her away from the little children, and I

had washing to do and my husband had no work, that it was driving me crazy; and he said if I would keep still and not make it public to the bystanders, he would bring the cow back; and he said, you said you would burn me out, but I said I said that while I was mad and did not mean it. He said he did not think I meant it or that I would burn him out.

\*       \*       \*       \*       \*       \*       \*

Q. State whether you had a conversation with the defendant in this action, Mr. Dreyfus, at the restaurant, or Mrs. Kiser, or near that restaurant, some few days after it was claimed that this threat was justifiable.

A. I had a conversation in the restaurant.

Q. State what Dreyfus said with reference to the matter of threats at that time.

A. Dreyfus told me he was sorry that he had had me arrested, and had been several times; he said if he had it to do over again he would not have done it; that it was not really his fault, it was his partner's, Dougherty.

Q. What did he say about believing that you meant to do it?

A. He said he knew I did not mean it when I said it, and he was not uneasy about my burning him out.

The witness further testified that her husband had sued the plaintiff in error for damages for selling him a diseased horse and that she was arrested on the criminal charge two or three days after that suit was begun.

E. W. Cram testified:

Q. Did you have a conversation with Wm. Dreyfus, the defendant, just before the arrest of Mrs. Aul, in this city, concerning the proposed arrest and certain alleged threats that she had made.

A. Yes, sir.

Q. Tell the jury what that conversation was, what he said, what he and you both said.

A. I saw him the evening before, it was about 2 o'clock

in the afternoon.   I met him in front of the Beehive store, and as I had been interested in settling, he approached me and said, "Frank has sued me sure enough."   Well, I told you he would do it.   He says he has done it.   I replied of course, I knew he was going to for I saw him fix out the papers."   "Well," he says, "they have commenced it, and now I will give them just as much trouble as they have given me."   "What are you going to do now?" I asked.   He says, "I am going to have his wife arrested."   I says, "What for?"   "For threatening to burn my barn," he replied.   I said, "I guess she does not deny the charge."   He did not say much more but started for Marston's law office.

Q.  What did he say in addition to what you have said?

A.  I do not know as I could give it; he uttered several oaths and several comments on the matter and went off.

Q.  In that same conversation did he say anything as to whether or not he believed that she intended to do that or not?

A.  No, not in that way.   He did not give me that opinion.

Q.  Did you have any other conversation besides that?

A.  Yes, a word or two.

Q.  When and where was that?

A.  At the same time and place.

Q.  What was that conversation?

A.  I says, "Dreyfus, she says she is sorry.   She said it and did not mean to do it."   "Well," he says, "I do not know anything about that."   I said, "I didn't suppose she denies it either for she told me she said it."   "All right," he said, "I want you as a witness," and went off and left me standing.

Q.  How long was that after Aul had sued him?

A.  I think from what he said that he had just got the notice that day.   He came down and said, "Aul has sued me."

C. C. Dawson testified to having a conversation with Dreyfus as follows:

Q. What did he say in that conversation, if anything, about the threats?

A. I says, "Well, do you think that Mrs. Aul meant to burn you out?" Says he, "I don't think she did, for the simple reason that she was so mad that she did not know what she was talking about."

The plaintiff in error admits that he knew a month prior to the filing of the complaint for the arrest of Mrs. Aul that she had made the threats, and immediately after the plaintiff in error had been sued by Mr. Aul for damages for the sale of the horse that the criminal prosecution was commenced against the defendant in error. The testimony tended to show that the object the plaintiff in error had in causing her arrest was not for the vindication of the law, but that the prosecution was instituted maliciously. While the testimony of Mrs. Aul and her witnesses is contradicted by the plaintiff in error and his witnesses, the evidence is sufficient to sustain the verdict.

The plaintiff in error claims that before making the arrest he made a true and full statement of all the facts upon which the complaint was based to his attorneys, and also the county attorney, and was advised by them to institute the criminal prosecution, and that he, in good faith, acted solely upon their advice. This, if true, would constitute a good defense to the action. (*Johnson v. Miller*, 29 N. W. Rep. [Ia.], , 743; *Acton v. Coffman*, 36 Id., [Ia.], 774; *Ash v. Marlow*, 20 Ohio, 119; *Schippel v. Norton*, 16 Pac. Rep. [Kan.], 804; *Wicker v. Hotchkiss*, 62 Ill., 107.)

In order to repel the inference of malice, or to establish probable cause by proof of acting upon the advice of an attorney, it must appear from the evidence that the opinion of such counsel was fairly asked upon the real facts, and not upon a statement that conceals part of the facts. It is not claimed that the plaintiff in error stated to his

counsel, when he sought their advice, any of the facts disclosed by the above quoted testimony of Mrs. Aul and her witnesses. If the testimony of these witnesses was true, and of which the jurors were the sole judges, then the advice of counsel is of no avail in this action. (*Manning v. Finn*, 23 Neb., 511; *Roy v. Goings*, 112 Ill., 656.)

It is contended that the preliminary examination was in no sense a trial, and that her discharge was not such a final determination of the prosecution as entitled her to maintain this action. This question was before the court in *Casebeer v. Drahoble*, 13 Neb., 465, when it was held that a discharge upon a preliminary examination was a legal determination of the prosecution. In *Casebeer v. Rice*, 18 Neb., 203, the court says that "the first contention is, that the dismissal of the criminal prosecution was not such a final determination thereof as would entitle the defendants in error to recover. While there are some cases which seem to hold with plaintiffs in error upon that point, yet we deem it well settled by the great weight of authority that there was such a final termination of the prosecution as would enable defendants in error to maintain their action if the prosecution was found to be malicious and without probable cause." The accused was discharged upon the hearing, and the prosecution was not commenced again. This, under our decisions, was a final termination of the prosecution.

Several of the exceptions relate to the giving and refusing of certain instructions. The second instruction given by the court on its own motion was excepted to. It was as follows: "If you find that the prosecution against the plaintiff was commenced without probable cause, excuse, or justification, you will find for the plaintiff; and in assessing her damages, if any have been proven, you may consider the expense, labor, and trouble, if any, to which she has been put in freeing herself from the charge made against her; also, her mental sufferings, if any, injury to

her reputation, if any; but you should not in any event give greater damages, if any, than the plaintiff has actually sustained, as shown by the evidence; and you should allow nothing by way of punishment." The giving of this instruction was error. It left it for the jury to conjecture what facts constituted probable cause or excuse. It was the duty of the court to inform the jury what facts constituted probable cause and then leave it for the jury to say what facts are proven. (*Turner v. O'Brien*, 5 Neb., 542; *Ross v. Langworthy*, 13 Id., 495; *Castro v. De Uriarte*, 16 Fed. Rep., 93.) None of the instructions given informed the jury what constituted probable cause.

The plaintiff in error requested the court to instruct the jury: "That before the plaintiff can recover in this case she must establish by a preponderance of the evidence two things: First, that the prosecution wherein the defendant sought to have the plaintiff held to bail to keep the peace (which is the prosecution complained of) was commenced without probable cause; and, Second, that in making the complaint in evidence and causing the arrest of the plaintiff, the defendant was actuated by malice; both of these must be proved to entitle the plaintiff to a verdict." This request was refused and such refusal is assigned as error. This request stated the law correctly, was applicable to the evidence, and was not covered by the instructions given by the court. In order to sustain an action for malicious prosecution the plaintiff must establish that the prosecution complained of was commenced by the defendant through malice, without probable cause, and that the prosecution was ended before the commencement of the suit. The want of probable cause and malice must concur. There was no dispute but what the prosecution was ended. There was, however, a conflict in the testimony on the question of want of probable cause and malice, and the request should have been given. (*Turner v. O'Brien*, 11 Neb., 108; *Sherburne v. Rodman*, 8 N. W. Rep. [Mich.], 414; *Spain v.*

*Howe,* 25 Wis., 625; *Malone v. Murphy,* 2 Kan., 250; *Ritchey v. Davis,* 11 Ia., 124.)

Counsel for the plaintiff in error say in their brief that in an action for malicious prosecution this court has added another element, viz: *injury to the plaintiff.* In this counsel are mistaken. The case of *Parmer v. Keith,* 16 Neb., 92, which they cite, was an action for malicious *attachment.* In that kind of a case damage to the plaintiff must be proven; not so in an action for malicious prosecution.

The judgment must be reversed for the errors pointed out, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.