Rider v. Murphy.

JOHN RIDER ET AL. V. JOHN H. MURPHY.

47    857
54    546

FILED APRIL 7, 1896.    No. 6468.

1. Malicious Prosecution: PROBABLE CAUSE: MALICE.    To
render a prosecuting witness liable in an action for ma-
licious prosecution, it must be alleged and proved that his
conduct in the premises was inspired by malicious mo-
tives and was without probable cause.

2. ———: ———.   Probable cause is the existence of such
facts and circumstances as would excite the belief in a
reasonable man's mind, acting on the facts within the
knowledge of the prosecutor, that the person charged
was guilty of the crime for which he was prosecuted.   (14
Am. & Eng. Ency. Law, 24.)

3. ———: ———: MALICE.   Evidence examined and found

wholly insufficient to sustain the finding of the jury that
the plaintiffs in error were inspired by malicious motives
in causing the defendant in error to be prosecuted for
the crime of embezzlement, and wholly insufficient to
support the finding of the jury that such prosecution was
begun and carried on without probable cause.

ERROR from the district court of Douglas
county. Tried below before OGDEN, J.

*James W. Orr* and *Lee S. Estelle,* for plaintiffs in
error.

*Schomp & Corson, contra.*

RAGAN, C.

In the district court of Douglas county John H.
Murphy sued John Rider and Fred H. Glick and
one J. A. Rider, since deceased, for damages for
malicious prosecution. Murphy had a verdict
and judgment, and Rider & Glick prosecute to
this court a petition in error.

It appears that in the autumn of 1891 Rider &
Glick were engaged in business in the city of
Omaha, and dealing in butter, eggs, and poultry
and other farm products. On the trial of this
case the evidence of Murphy, so far as the same is
material here, was, in substance, as follows: In
November, 1891, at the instance of Rider & Glick,
he went to Milford, in this state, to purchase but-
ter and eggs and poultry. He purchased a con-
siderable quantity which he shipped to Rider &
Glick. Murphy paid his traveling expenses and
Rider & Glick furnished the money to pay for
the products bought. These products Murphy
shipped to Rider & Glick at Omaha and they dis-
posed of them. When Murphy returned to
Omaha from the Milford trip, a difficulty arose be-

tween him and Rider & Glick as to the amount
of money that was coming to him from them for
the products he had bought and shipped them on
this Milford trip. Murphy claimed that he was
to have one-half the profits realized from the
products purchased, and that those profits ought
to be somewhere in the neighborhood of $300.
Rider & Glick, on the other hand, claimed that
the amount due to Murphy was $6.77. They
made him out a statement from the books show-
ing this fact and offered him a check for that
amount of money. Murphy became enraged and
refused to accept the check in settlement, threw
it down, and left the office of Rider & Glick. He
called at the office of Rider & Glick several times
after that time, but the Milford deal was not
talked of at all those visits.

Early in December, 1891, Murphy, while at the
office of Rider & Glick, was told by them that he
could make some money by buying potatoes in
Iowa for them; that they would furnish the money
to pay for the potatoes and pay thirty cents a
bushel for all the potatoes—not exceeding a cer-
tain quantity—which he might buy, Murphy to
have as compensation the difference between
what he might pay for the potatoes and the thirty
cents a bushel which Rider & Glick were to pay.
He agreed to go to Iowa and buy potatoes on
these terms and went to Glick and said, "I will
take that check now." Glick thereupon handed
Murphy the check for $6.77. The check was dated
the 8th of December, 1891, and Murphy the next
morning presented this check to the bank on
which it was drawn, and he then discovered that
it had written across the back of it, "in full set-
tlement of account," whereupon he erased that

indorsement and cashed the check. Murphy then
went to Iowa and contracted for some potatoes.
He caused Rider & Glick to deposit $100 in a bank
in Iowa to his credit with which to pay for the
potatoes bought. He then came to Omaha and
told Rider & Glick that he had bought some po-
tatoes for them; that they would be shipped in
refrigerator cars and would not arrive for about
a week, and then demanded of them that they
first settle up the Milford deal in accordance with
what he claimed. This, we repeat, is substan-
tially Murphy's evidence. The record further
shows that no part of the money which Rider &
Glick furnished Murphy was ever returned to
them nor did they ever receive any of the pota-
toes bought with that money by Murphy. Very
soon after the last interview described between
Murphy and Rider & Glick the latter ascertained
that Murphy had used the money sent him in buy-
ing potatoes; that he had put them in a car and
consigned them to Hayden Bros., a firm doing
business in the city of Omaha. Acting upon this
information Rider & Glick swore out a complaint
charging Murphy with embezzlement. He was
bound over to the district court, an information
charging him with embezzlement was filed by the
prosecuting attorney, on which he was tried and
acquitted. This is the prosecution made the ba-
sis of the present action. Does this evidence
support the verdict? In *Dreyfus v. Aul*, 29 Neb.,
191, this court held: "To entitle the plaintiff
to recover in such an action he must prove a
want of probable cause, malice of the defendant,
and that the criminal prosecution is ended."
This case was followed in *Vennum v. Huston*, 38
Neb., 293, and it was there held: "To render a

prosecuting witness liable in an action for malicious prosecution it must be alleged and proved that his conduct in the premises was inspired by malicious motives and was without probable cause." In *Davie v. Wisher*, 72 Ill., 262, probable cause is thus defined: "Probable cause is defined to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." And in 14 American & English Encyclopedia of Law, 24, the authorities, as to what constitutes probable cause, are collated, and it is there said: "Probable cause is the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted."

Now, let us examine the undisputed evidence in this case, and the evidence of Murphy himself, in the light of the rules and authorities quoted above. Rider & Glick prosecuted Murphy for the crime of embezzlement. They knew at the time they did so that he had been acting as their agent to purchase potatoes for them; that he had used the money they furnished him for that purpose in the purchase of potatoes; that he had shipped these potatoes to other persons and that he had in effect, according to his own evidence, demanded of them that they allow him some $300 which he claimed was due from the Milford deal, as a condition precedent to his delivering to them the potatoes which he had bought for them with their money, or the proceeds thereof. They also knew that when he was first informed as to the amount

coming to him from the Milford deal that he had refused to accept it; that subsequently he had undertaken to buy potatoes for them and had voluntarily demanded the check which he had refused in settlement of the Milford deal; that he had received and cashed that check; and they had the right to believe from Murphy's conduct that the difference which had existed between them in reference to the profits of the Milford deal had by them been settled to Murphy's satisfaction, or that he had accepted the check in settlement. (*Treat v. Price*, 47 Neb., 875.) It seems to us that these facts and circumstances known to Rider & Glick, and on which they acted, were sufficient to excite the belief in their minds, they being reasonable men, that Murphy was guilty of the crime with which they charged him, but whether Murphy accepted the check of $6.77 in settlement of the Milford deal or not, the evidence shows beyond all question that Rider & Glick thought he had; and the argument is now made here in behalf of Murphy, that Rider & Glick had the books showing the profits of the Milford deal; that they had Murphy in their power, and that he, Murphy, felt and realized his position, and thought what he lacked in power he must supply by policy; he must in some way get the firm of Rider & Glick to be his creditor rather than his debtor; in other words, this argument is a concession by Murphy's counsel, that at the time he accepted the check not only did Rider & Glick believe that he accepted it in settlement, but that Murphy knew they so understood. But if it be conceded that Murphy did not accept this check in settlement of the Milford deal, he was none the less the agent and trustee of

Rider & Glick in the transaction of purchasing the potatoes. We think, therefore, that Rider & Glick had probable cause to believe Murphy guilty of embezzlement at the time they caused him to be arrested for that crime.

There is in the record no evidence to support the finding of the jury that the conduct of Rider & Glick in causing Murphy to be prosecuted for embezzlement was inspired by a malicious motive; nor to support the finding of the jury that the prosecution was begun and carried on without probable cause. The judgment of the district court is reversed and the cause remanded.

