OHRENBERGER *v.* PERE MARQUETTE RAILROAD CO.

1. MALICIOUS PROSECUTION—EVIDENCE OF INNOCENCE OF PLAINTIFF ADMISSIBLE.

In an action for damages for alleged malicious prosecution for breaking and entering a railroad car, where plaintiff claims that the facts and circumstances tending to establish his innocence were communicated to defendants before they instituted the criminal proceeding, evidence of plaintiff's innocence was admissible for the purpose of showing want of probable cause.

2. SAME—PROBABLE CAUSE—DUTY OF DEFENDANTS TO INVESTIGATE CHARGE—EVIDENCE—ADMISSIBILITY.

The admission of testimony by a witness whom neither party claimed knew anything about the alleged offense that he was not interviewed by defendants in regard thereto, offered for the purpose of showing defendant's lack of diligence in investigating the charge against plaintiff, and for its bearing upon probable cause, *held*, although it may have been harmless in itself, prejudicial error in view of the fact that the information upon which defendants acted was sufficient in law to constitute probable cause and came from plaintiff himself, and they were therefore not required to make further investigation.

3. SAME—APPEAL AND ERROR—CURING ERROR.

Although the harmful effect of said testimony as to the duty of defendants to investigate further may have been cured by the charge that no such duty rested upon them, where it left to the jury the right to use it as evidence that plaintiff was telling the truth, it was still harmful, especially in view of the further charge that if plaintiff and his witnesses were telling the truth then he had a case, and if defendants and their witnesses were telling the truth then he had no case.

4. SAME—MALICE—EVIDENCE—ADMISSIBILITY.

The admission of testimony by a witness that no effort had been made by defendants to produce him as a witness in the criminal case against plaintiff, *held*, prejudicial, where coupled with the claim that defendants' failure to procure said witness was evidence of malice although the testimony in and of itself may not have been harmful.

5. APPEAL AND ERROR—REFUSAL OF REQUESTS TO CHARGE NOT ERROR WHERE COVERED IN GENERAL CHARGE.

Where the charge of the court clearly and fairly presented the issues involved, and the requests to charge submitted by defendants were therefore unnecessary, there was no error in rejecting them.

Error to Kent; Perkins (Willis B.), J.     Submitted June 13, 1923.     (Docket No. 16.)     Decided October 1, 1923.

Case by Harry Ohrenberger against the Pere Mar-

quette Railroad Company and another for malicious prosecution.    Judgment for plaintiff.    Defendants bring error.    Reversed.

*Williams, Shields & Seaton* and *Charles E. Ward,* for appellants.

*John M. Dunham* and *James E. Lombard* (*Thomas E. Atkinson,* of counsel), for appellee.

McDONALD, J.    The purpose of this action is to recover damages arising out of an alleged malicious prosecution.    In April, 1920, the plaintiff had been working for the defendant company for about eight years as a freight brakeman.    His home was in Grand Rapids.    The defendant Benjamin Havens is a special police agent for the Pere Marquette Railroad Company.    On or about the 11th of April, 1920, the plaintiff's wife, from whom he was at that time separated, turned over to Havens various articles of property which she claimed the plaintiff had stolen from the railroad company.    Havens took the goods to his office in the freight house and there interviewed the plaintiff.    As a result of this interview the plaintiff wrote with his own hand and executed the following statement:

"4-11-20.

"B. F. HAVENS:
    "While heading in at New Richmond I found a package on the track I knew must belong to the train. It was broken open and the can of varnish was half gone.    I took the matches and the varnish home and threw the can away.    I am very sorry I did not turn it in as I should and would like to fix this thing up and avoid trouble.

"HARRY OHRENBERGER."

In addition to this written statement Havens says that the plaintiff told him that he knew the goods belonged to the train because one of the doors was partly

open and other merchandise was lying in the door; that he shoved these back and closed it; that he took the goods which he found on the ground into the caboose, put them in a grip and later carried them home; that his conductor was Mr. Hoatlin, but that he did not notify him as to the finding of the merchandise, did not make a report of it or turn the goods into the company.    On the morning following this interview the plaintiff and Havens met by appointment at the office of Mr. Wallace, who was the division superintendent of defendant company at Grand Rapids.    It is the defendants' claim that there were present at this conference the plaintiff, Mr. Wallace, Mr. Pettis, Mr. Havens, and a Mr. Hoffman, since deceased; that Mr. Wallace read the statement to the plaintiff and that he acknowledged it to be true; that at Mr. Wallace's request he made a further oral statement substantially like that made to Mr. Havens on the preceding evening. Following this defendant Havens laid the matter before the prosecuting attorney of Allegan county.    A complaint was drawn, signed, and sworn to by Mr. Havens, in which it was charged:

"That hereafter, to wit, about the 3d day of March, A. D. 1920, at the township of Manlius in the county aforesaid, Harry Ohrenberger did then and there break and enter in the daytime a railroad car with intent to commit the crime of larceny, contrary to the provisions of section 15294 of the Compiled Laws of the State of Michigan, for the year 1915, and then and there six harness snaps, five cartons of matches and one pail of varnish, did steal, take, and carry away," etc.

On this complaint a warrant was issued; the plaintiff was arrested; he waived examination and gave bail for his appearance at the circuit court for trial.    At the May, 1920, term of the circuit court an information was filed against him but nothing further was done until October 11, 1920, when, on motion of the

prosecuting attorney, an order was entered dismissing the case. Four months later the plaintiff brought this suit. It is his claim that he did not voluntarily make and sign the statement which Mr. Havens secured from him; that he wrote it as Havens dictated on the promise from Havens that with such a statement he could get the matter fixed up. He says that the statement does not contain the facts; that he told Havens at the time that it was not true; that he did not know or believe that the property belonged to the railroad company, but thought that it belonged to some farmer who had lost it from his wagon. He denies that he told Havens the door of the car was open, and that other goods were in the doorway. He says that he first saw these goods lying on the highway over which the train passed; that he called the attention of Mr. Wilsey, got off of the caboose, picked them up and showed them to the conductor; that he and the conductor then examined the train and found every car door sealed and in good order. He claims that these facts he made known to Mr. Havens; that Havens, acting for the company and knowing that he was not guilty of any offense, without any probable cause, maliciously secured his arrest. The plaintiff obtained a judgment for $10,000. A motion for a new trial was made and denied. Defendants sued out a writ of error and are here claiming that the judgment should be reversed because of the admission of incompetent and prejudicial evidence; because of the improper conduct of counsel; the refusal to give certain requests; and errors in the charge as given.

Errors in the Admission of Evidence. It is first claimed that the court erred in permitting the plaintiff to introduce evidence of his innocence for the purpose of showing want of probable cause. In support of this contention counsel cite a number of cases from

other States: *Stubbs* v. *Mulholland*, 168 Mo. 47 (67 S. W. 650) ; *Skidmore* v. *Bricker*, 77 Ill. 164; *Turner* v. *O'Brien*, 11 Neb. 108 (7 N. W. 850) ; *Fenstermaker* v. *Page*, 20 Nev. 290 (21 Pac. 322) ; *Fox* v. *Smith*, 25 R. I. 255 (55 Atl. 698) ; *King* v. *Colvin*, 11 R. I. 582.

Whatever may be the rule in other jurisdictions, we think the law for this State was settled in *Patterson* v. *Garlock*, 39 Mich. 447.     In that case Mr. Justice GRAVES, speaking for the entire court, said:

"It requires no reasoning to show, that where the question is whether one man has fair ground to charge another with a crime, it cannot be laid down that the abstract fact of his guilt or innocence must be necessarily impertinent and immaterial, and no ground is perceived for holding that the plaintiff was forbidden resort to such evidence in aid of his other proof to support his allegation that the accusation by the defendant was destitute of probable cause.     The circumstances that the nature of the action did not require of the plaintiff such proof would not seem to be controlling."

We think the question does not require any further discussion.     There was no error in permitting the plaintiff to introduce evidence for the purpose of showing that he was not guilty of the crime with which the defendants had charged him.     Especially is it true in a case such as this where, from the standpoint of the plaintiff's evidence, the facts and circumstances tending to establish his innocence were communicated to the defendants before they instituted the criminal prosecution.

Fred Hoatlin was called as a witness by the plaintiff for cross-examination under the statute.     He was one of the defendant company's freight conductors. It was the claim of Mr. Havens that, when the plaintiff related to him his story as to the taking of the goods, he said that Hoatlin was in charge of the train.     The plaintiff claimed that he told Havens that Leon Wilsey

was his conductor at that time. Neither party claimed that Hoatlin knew anything about the finding of the goods by the plaintiff. Over the objection of defendants' counsel, he was permitted to testify that Havens never talked to him about the facts upon which the charge against the plaintiff was founded. In offering this testimony, counsel argued that the investigation made by Havens would have a bearing on the question of probable cause, that it was competent to show the "diligence which this company and the officers used to ascertain the foundation of these charges." In ruling that it might be admitted the court said:

"Now I understand your point. Your claim is that this witness should have been interviewed before the complaint was made; that Mr. Havens ought not to have relied upon the statement made to him by plaintiff's wife or upon the statements made by the plaintiff, but that in addition he ought to have consulted the conductor whom the plaintiff said was on the train with him at that time. That is your point. Now, whatever happened later is immaterial. You get at that point and I will permit the answer."

This testimony may have been harmless in itself, but it was given prejudicial effect by the purpose for which it was offered and received. It was not required of the defendants that they should make further investigation by interviewing Hoatlin, because the information which they claimed to have received, and upon which they acted, was sufficient in law to constitute probable cause and came from the plaintiff himself. In making the criminal charge against him they had a right to rely on his story as to how he became possessed of their property. If the information had come from any other source, caution and discretion would have required an investigation to ascertain its truth; but, coming from the plaintiff himself, no further inquiry into the facts was necessary. The

testimony could not be considered by the jury as evidence of the want of probable cause.    It was error for the court to receive it for that purpose.    In the charge given the court made no reference to this testimony, but, before the arguments, he told counsel in the presence of the jury:

"I do not believe further inquiry was necessary as a matter of law, and I do not believe that this question is controlling in the case, and, if it has any bearing at all, it simply bears upon the credibility of the witness as to who is telling the truth.    Again, that in my judgment, if the plaintiff is telling the truth, he has got a case, and is entitled to recover; if the defendant Havens is telling the truth, and his witnesses are telling the truth, then he has no cause, and the jury should render a verdict of no cause of action, because what they claim they were told, in and of itself, constitutes probable cause as a matter of law."

We think these remarks of the court may have cured the harmful effect of the ruling permitting the jury to consider the failure to verify the facts in determining the question of probable cause, but it left them the right to use it as evidence that the plaintiff was telling the truth.    If he was telling the truth he was entitled to a verdict.    In the charge given the court said:

"I confine your consideration of the subject of probable cause to the single question, as to whether or not the story told by the plaintiff is true or the story told by the defendant Havens and the witnesses for the defendant is true."

In determining this question the jury was told that they might use the fact that Havens did not consult Hoatlin to verify plaintiff's story as evidence that plaintiff was telling the truth.    To allow them to corroborate his story with evidence which could not be considered for that purpose, gave the plaintiff an advantage to which he was not entitled.    As the jury found that the plaintiff was telling the truth, and as

his story was contradicted by the two officers, Havens and Pettis, and by Wallace, the superintendent, and Montague, the prosecuting attorney, it may be reasonably assumed that the testimony complained of was helpful to him and harmful to the defendants.

Counsel for defendants also claim that the court erred in permitting Hoatlin to testify that, though he was available as a witness in the criminal case, the defendants made no effort to secure his testimony, and that he went to Allegan with the plaintiff and not with the defendants. This testimony was received for the purpose of showing actual malice. In the argument preceding its admission, counsel for the plaintiff said:

"There is this sentence in the petition of the prosecutor to dismiss the case, he states he is in receipt of information from railroad officials that they cannot produce the evidence to secure a conviction. Now, the only witness, outside of Ben Havens, mentioned here, was Fred Hoatlin. Now, we want to show they never talked to him and never tried to get him and if they didn't try to get a man that knew about it, they didn't try very hard to get anybody else. * * *

"Now, they come into this court and they went into that court and had the prosecutor do it for them, and they cannot produce the evidence and the case is dismissed rather than his being found not guilty. Now, they try to justify in this court by saying. 'We could not get our witness,' and I want to show that they did not try as bearing on their malice and good faith.

"That is what we propose to show and when we show that a man in charge of the train from which they were claiming these goods were stolen, was never interviewed by these people, that is a fact we have a right to show and to further show they never made any effort to produce him as a witness at the time as bearing upon their actual malice in this case."

And in admitting the evidence the court said:

"Well, yes, and it may also bear upon the question as to whether or not the plaintiff was telling them the truth."

The fact that Havens did not procure the attendance of Hoatlin at the criminal trial, that he went to Allegan with the plaintiff and not with the defendants, in and of itself, was not important for either side of this case; but the argument of counsel, the purpose which they claimed for the testimony and the approval of the court by his ruling, made it harmful to the defendants. It gave the jury to understand that they might find from these facts that Havens acted maliciously in instituting the criminal proceedings against the plaintiff, and that they might also consider it to corroborate the plaintiff's testimony. We are at a loss to understand in what way it could properly be used to corroborate the plaintiff. But the criminal case was not dismissed for the failure to procure the testimony of Hoatlin. The undisputed evidence was that the prosecuting attorney dismissed it because the defendants were unable to furnish evidence of the loss of these goods from any certain car or particular shipment. Hoatlin knew nothing about it. He had reported no loss as he would be required to do if he had known of any from his train. In fact he was not the conductor in charge of the train when these goods were found by the plaintiff. If any malice is to be charged to the defendants because they did not interview Hoatlin and furnish his testimony to the prosecutor, it would be because he had some knowledge which it was the defendants' duty to obtain; but it is conceded that he had no such knowledge, and there is no evidence that defendants had reason to believe he knew anything about the facts, except that Hoatlin was the conductor of the train at the time the complaint alleged the goods were stolen. It is the defendants' claim that they got this information from the plaintiff, and it is undisputed that they gave Hoatlin's name to the prosecuting attorney, and it was placed on the information. We think this was all that the

defendants were required to do with reference to securing Hoatlin as a witness. The testimony complained of, though not indicative of malice, and of itself not harmful, when combined with the claims made for it in the argument of counsel and the ruling of the court, operated to the defendants' prejudice. It had no tendency to show malice and could not in any sense corroborate the plaintiff. The court erred in permitting it to be so used.

We find no reversible error in the charge of the court; it clearly and fairly presented the issues involved and the law applicable thereto. The requests submitted by counsel for the defendants were unnecessary in view of the fact that the court instructed the jury that the information which the defendants claimed they received from the plaintiff, and upon which they acted in instituting the criminal proceedings, was sufficient in law to constitute probable cause.

It becomes unnecessary to discuss any of the other assignments of error.

The judgment is reversed and a new trial granted. The defendants will have costs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.