JOSEPH E. COBBEY V. STATE JOURNAL COMPANY ET AL.*

FILED DECEMBER 7, 1906.   No. 14,122.

Corporations: PROCESS. Section 65 of the code applies to corporations as well as individuals, and, if an action is rightly brought in one county, summons may be issued to another county for service upon a corporation.

ERROR to the district court for Gage county: ALBERT H. BABCOCK, JUDGE. Reversed.

* Rehearing allowed. See opinion, p. 626, post.

*L. M. Pemberton* and *Hazlett & Jack,* for plaintiff in error.

*Hall, Woods & Pound, contra.*

LETTON, J.

The plaintiff in error brought this action in the district court for Gage county against the defendants in error, jointly, to recover damages for an alleged unlawful conspiracy by them for the malicious prosecution of an injunction suit. The defendant Stonebraker was the only defendant served with summons in that county, but a summons was issued to Lancaster county and served therein upon the other defendants. These defendants, the State Journal Company and the Nebraska State Journal Association, are corporations organized under the laws of this state, each having its principal place of business in Lancaster county and having no place of business in Gage county. The corporations appeared separately and objected to the jurisdiction of the court over their persons. The objections were sustained, and the suit dismissed as to them. The plaintiff seeks by this proceeding to review the judgment of dismissal.

The question for determination is whether, when an action is rightly brought in any county, a summons may be issued to another county and served upon a domestic corporation, or whether the provisions of section 55 of the code are exclusive as to the venue of actions against domestic corporations, whether sued alone or jointly. Section 55 is as follows: "An action other than one of those mentioned in the first three sections of this title, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business; but if such corporation be an insurance company, the action may be brought in the county where the cause of action, or some part thereof, arose." "The first three sections" referred

to have reference to real estate.  Sections 54, 56, 57, 58 and 59 refer to actions for specific causes and against specific individuals and corporations, the provisions of none of these sections having reference to an action of the nature of this one.  Section 60 provides: "Every other action must be brought in the county in which the defendant, or some one of the defendants resides, or may be summoned."  All of these sections from 51 to 60 inclusive are found under title IV of the code, referring to "the county in which actions are to be brought."  Section 65, found under title V, which is entitled "Commencement of a Civil Action," is as follows: "Where the action is rightly brought in any county, according to the provisions of title IV, a summons shall be issued to any other county, against any one or more of the defendants, at the plaintiff's request."

Plaintiff in error contends that this action, having been rightly brought in Gage county against the defendant Stonebraker, a summons was properly issued from that county to Lancaster county for service upon the other defendants; while defendants in error insist that under section 55 no jurisdiction in such an action as this can be had over a domestic corporation, other than insurance companies, in a county other than that in which it is situated or has its principal office or place of business.  Section 15, art. III of the constitution, provides: "The legislature shall not pass local or special laws in any of the following cases, that is to say:   *   *   *   granting to any corporation, association, or individual any special or exclusive privileges, immunity, or franchise whatever."  Section 3, art. XIb, provides: "All corporations may sue and be sued in like cases as natural persons."  Section 4117, Ann. St., provides that corporations may have power "to sue and be sued, to complain and defend in courts of law and equity"; and it has been held that the general provisions of the code authorizing a confession of judgment by any person are by reason of these provisions applicable to corporations.  *Solomon v. Schneider,*

56 Neb. 680. It seems apparent that the purpose of the makers of the organic law and of the legislature was to confer no greater or higher privileges upon corporations, with respect to immunity from suit than are conferred upon natural persons, and that in the eye of the law a corporation is regarded, so far as liability to sue and be sued is concerned, the same as an ordinary individual. 10 Cyc. 1333. So that, in proceeding to the consideration of the various sections of the statute bearing upon the question, that construction should be given which, without imposing undue burdens upon domestic corporations, would most nearly assimilate their condition, in respect to liability to suit, to that of natural persons. It may be well to notice in this connection that this is the first time this question has been presented to the court for consideration, and that it has not been an uncommon practice for actions to be brought against individuals and corporations, service to be had upon the individual, and a summons sent to another county for the corporation. This practice of itself, of course, would constitute no reason for setting aside a plain statutory provision, but, in a matter as to which the statute is ambiguous and requires construction, the fact of acquiescence by the profession in the practice for many years is worthy of consideration. In construing statutes, all provisions bearing upon the same subject should be taken together and the intention of the legislature determined from a comprehensive survey of the whole, rather than by passing upon isolated sections. The position of defendants in error is, in effect, that the word "may" in section 55 means "must," that the section should read that an action other than one of those mentioned in the first three sections of this title, against a corporation created by the laws of this state, other than an insurance company, *must* be brought in the county in which it is situated, or has its principal office or place of business, and they take the position that, in an action other than those provided for in sections 51, 52 and 53 of the code, no jurisdiction is obtained over a

domestic corporation, not an insurance company, in a county in which it neither is situated nor has its principal office or place of business, by issuance of summons to another county where it has its principal office or place of business, and service there.

This action is for a joint tort, in which one of the defendants was properly served in Gage county. The action, then, was rightly brought as to him in that county, and if the other defendants had been individuals there is no question but that they might have been summoned in any other county in which they might have been found, and jurisdiction thereby obtained over their persons. Does the fact that they are domestic corporations alter the case? In *Adair County Bank v. Forrey,* 74 Neb. 811, we construed section 59 of the code, which is in terms equally as exclusive as to actions against nonresidents of this state as section 55 is with reference to corporations. It provides that an action other than one of those mentioned in the first three sections of this title, against a nonresident of this state, may be brought in any county in which there may be property or debts owing to said defendant, or where said defendant may be found, and it was strenuously urged, upon the same grounds as urged by the defendants in error in this case, that this section was exclusive, that it related to venue, and that an action could not be brought in one county and a summons sent to another for service upon a nonresident, so as to confer jurisdiction upon the court of the first county. In that case it is said:

"Under section 59, title IV, relating to venue, the proper venue of the action was in Douglas county. The provisions of title V do not apply to venue, but provide for the manner in which actions may be commenced, and section 65 provides for the place where summons may be served when an action has been rightly brought under the provisions of title IV. It is an imperative rule of construction that effect be given, if possible, to every portion of a statute. To adopt one construction would eliminate

section 65 entirely, while the other construction gives effect to both sections. Further than this,. the construction contended for by defendant in error would necessitate a multiplicity of actions in a case where nonresident defendants were numerous, if service might be had upon them in different counties within this state, whereas, by the other construction, one action only would be required, though they might be summoned in different counties. These sections must be construed together, and, where an action has rightly been brought in one county, a summons may be issued to any other county in the state, and served upon any person personally present therein, whether resident or nonresident. If a person is personally present within the confines of the state, it makes no difference whether he is a resident or nonresident, so far as his liability to personal service of summons is concerned. A nonresident has no greater privilege in that regard than a resident of the state."

Recently this identical question has been presented to the courts of Ohio, but apparently has not yet reached the court of last resort in that state. In *Baltimore & O. R. Co. v. McPeek,* 16 Ohio C. C. 87, the facts were that two railroad companies objected to the jurisdiction upon like grounds as in this case. The court held that the venue against one of the companies was properly laid in the county where the suit was begun, and that, since the petition averred a joint liability, the other defendant was properly brought .into court under the provisions of the section of their code which is the same as our section 65. Two later cases arose in that state—*Stanton v. Enquirer Co.,* 7 Ohio N. P. 589; *Baldwin v. Wilson,* 7 Ohio N. P. 506. It is pointed out by the Ohio court that there are no special provisions governing the venue for actions brought jointly against two or more corporations, or against a corporation and individuals jointly, in the sections preceding section 60, and therefore such actions are embraced within the class denominated "other" actions in this section, and that, if the construction contended for by

the defendant in error is correct, then there are absolutely no provisions whereby a corporation and an individual can be sued together in a county outside of the residence of the corporation, nor can a suit ever be maintained against two corporations jointly, if they are residents of different counties, and, if this was intended, then it can be said that corporations enjoy immunities not granted to them, and that a citizen is not protected in this right to enforce a claim against a corporation as he is against a natural person under the law of the state. See, also, *Newberry v. Arkansas, K. & C. R. Co.,* 52 Kan. 613. In *Nebraska Mutual Hail Ins. Co. v. Meyers,* 66 Neb. 657, opinion by Mr. Commisssioner AMES, it is said, after stating that title IV applies alone to venue:

"Section 60 alone, among all the provisions of this title, treats of transitory actions, and permits the venue in such cases to be laid in any county in which the defendant, or one of several defendants, resides or may be summoned." And, after quoting section 65, he proceeds: "We think an erroneous impression as to the force of this section has prevailed, to some extent, among members of the bar. It is not confined in its operation, as some have seemed to suppose, to transitory actions, in which at least one of the defendants has been properly served with process in the county in which the action is brought, but, as its language expresses, applies to all actions, local as well as transitory, which are 'rightly brought in any county.'"

While certain expressions in *Western Travelers Accident Ass'n v. Taylor,* 62 Neb. 783, may be taken to be inconsistent with these views, a consideration of the question actually decided therein will show no conflict. In that case it is held that a domestic insurance company may be sued either in the county where its principal place of business is fixed by its charter, although its actual business is carried on and its offices are in another county, or in the county where it is situated and maintains a

43

place of business, or in any county where the cause or some part thereof arose. In that case the defendant was a mutual insurance company located at Grand Island. The cause of action arose in Iowa. The only service had was upon its secretary while temporarily in Douglas county, where the company had no agency and no place of business, and the court held that such a service did not confer jurisdiction upon the corporation. This was an action against the corporation alone, and it is very clear that the service attempted to be upheld was not justified by any provisions of the statute.

We are of the opinion that a proper regard for the legislative intent requires that the provisions of all these sections should be construed together; that the intention was to make it possible to bring a joint action against several defendants in a county in which one might be found, and thus prevent a number of suits for the same cause; that it was not the intention of the legislature to treat domestic corporations, when defendants in joint actions, in any other or different manner than natural persons; and that, if the venue was properly laid in Gage county against one of the defendants, a summons may properly issue from that county to any other county in the state, to be served in the manner provided by law for service upon either corporations or individuals.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

The following opinion on rehearing was filed July 12, 1907. *Former judgment of this court reversed and judgment of district court affirmed:*

1. **Malicious Prosecution.** An action for the malicious prosecution of a civil suit cannot be maintained if there was probable cause for bringing the suit complained of.

2. ————. Both malice and probable cause must exist in order to justify an action for malicious prosecution.

3. ———: PROBABLE CAUSE: EVIDENCE. A judgment in a civil suit or a conviction in a criminal suit by a court of competent jurisdiction is *prima facie* evidence of the existence of probable cause, but this is a rule of evidence, and is subject to rebuttal by proof that no probable cause in fact existed.

4. ———: ———. Where the question at issue was whether or not a statute was void as being in conflict with the constitution, the judgment of the district court to the effect that the statute was void constitutes *prima facie* evidence of the existence of probable cause, under the rule laid down in *Nehr v. Dobbs*, 47 Neb. 863; but, since in such a case the ultimate question of whether probable cause existed depends upon a construction of the law by this court, it is determined that the circumstances were sufficient to justify the bringing of the suit and that probable cause existed.

5. Petition examined, and *held* not to state a cause of action against the defendants for maliciously combining and conspiring together to injure the plaintiff's business. LETTON, J., dissents, as to this proposition.

BARNES, J.

At the former hearing of this case, the only point considered was the objection to the jurisdiction of the district court on the ground that the service could not be made upon a domestic corporation in a county other than that in which it was situated and had its principal place of business. Another objection was presented, but not orally argued, which was that the petition did not state a cause of action against Stonebraker, the sole defendant served in Gage county; that the court acquired no jurisdiction against him, and therefore acquired no jurisdiction of the defendants who were served in Lancaster county. The action was brought against Orville M. Stonebraker, Charles D. Traphagen, Hiland H. Wheeler, the State Journal Company and the Nebraska State Journal Association. The petition charges that the two corporation defendants are engaged in the publication of a daily and weekly newspaper, called the "Nebraska State Journal"; that the defendants Stonebraker and Traphagen are employed by said corporations and financially interested in each of them; that the corporations are both en-

gaged in the publication and sale of a compilation of the statutes of Nebraska made by the defendant Wheeler, who is also interested with the other defendants in the sale of that book, and the acts committed by the defendants, jointly and severally, were done for the purpose of promoting the sale of said book. The petition further alleges that the plaintiff is engaged in compiling and publishing annotated statutes of Nebraska; that he was authorized by the legislature of 1903 to prepare a statute of the state, and that 500 sets of such statutes, of two volumes each, were to be delivered, as soon as published, to the secretary of state, to be distributed to the members of the legislature and state officers, at the price of $9 a set; that, when said statutes were nearly completed, and for the purpose of hindering and delaying the plaintiff in the publication of said statutes, and of discrediting the said statutes of the plaintiff in the eyes of the public, and of thereby hindering and preventing the sale of the plaintiff's statutes, when published, and to prevent advance sales of said statutes, and for the enhancement of the sales of the said "Compiled Statutes of Nebraska" published by the defendants, the defendant Stonebraker, at the instigation and connivance of the other defendants, commenced an action against the secretary of state to enjoin him from accepting and receiving the 500 sets of statutes sold to the state, and against the auditor of public accounts to enjoin him from issuing a warrant to pay for the same, alleging that the act which authorized such purchase was unconstitutional, well knowing that this was not the case, and that the State Journal Company had sold thousands of copies of statutes to the state under like circumstances; that a temporary injunction was granted by the district court, which, on a final hearing, was made permanent, and a judgment therein was rendered against this plaintiff; that on appeal to the supreme court the judgment of the district court was reversed, and the case was dismissed. The petition further charges that the defendant published in the "State Jour-

nal" numerous articles in praise of their compiled stat-
utes, and reflecting upon the plaintiff and the work done
in the preparation of his annotated statutes, and that the
sales of his statutes have been largely decreased thereby;
that by reason of the acts of the defendants the publication
of plaintiff's statutes was delayed, and that he was obliged
to pay interest upon the money which he borrowed to
enable him to publish the books, and was obliged to pay
premiums for insurance upon the books prepared for
delivery, and that he was put to great expense in looking
after the action and trying to secure its dismissal; that
he lost the sale of a large number of statutes by reason
of the defendant's conduct; all to his damage in the sum
of $5,000.

Stonebraker's objection to the jurisdiction of the court
is, in effect, a demurrer to the petition, and will be so
considered. At the outset, we are met by a sharp contro-
versy between the parties as to the nature of the cause of
action. The plaintiff contends that the action is one to
recover for the malicious prosecution of a civil suit and
for a conspiracy to injure the plaintiff's business by pub-
lishing false and malicious statements concerning plain-
tiff's statutes in a newspaper controlled by the defend-
ants; while the defendants insist that the action is one to
recover damages for the malicious prosecution of a civil
action only. Since both parties agree that the action is,
in part at least, one for the malicious prosecution of a
civil suit, we will first determine whether the petition is
sufficient to sustain such an action. We assume, but do
not decide, that an action for the malicious prosecution
of a civil suit may be brought by a-person, not a party to
the suit, but whose property or business was affected by
the proceeding; and it is no longer an open question in
this state that an action may be maintained for the mali-
cious prosecution of a civil suit, even where there has
been no restraint of the person or seizure of property.
*McCormick Harvesting Machine Co. v. Willan,* 63 Neb.
391. It is also equally well settled that the essential

grounds upon which such an action rests are malice and want of probable cause, and both of these elements must be established by the plaintiff. *Turner v. O'Brien,* 5 Neb. 542; *Vennum v. Huston,* 38 Neb. 293; *Hagelund v. Murphy,* 54 Neb. 545. In an action for the malicious prosecution of a civil suit it is necessary to prove want of probable cause, malice and actual damage to the plaintiff resulting from the maintenance of the suit. *Parmer v. Keith,* 16 Neb. 91; *Jones v. Fruin,* 26 Neb. 76.

The facts pleaded in the petition show that the injunction suit was prosecuted to final determination in the district court by the defendant, Stonebraker. A temporary injunction was obtained, which was afterwards made permanent, and a final judgment was rendered by that court in his favor. Under the rule of the older cases such a judgment, rendered by a court of competent jurisdiction after a full consideration of the case, would be held to be conclusive evidence of the existence of probable cause for the institution of the suit; but the later cases hold mainly to the doctrine that, though in a criminal case there has been a conviction or in a civil case a judgment in favor of the plaintiff, yet the presumption that probable cause existed, based upon the fact of the adjudication, may be rebutted by proof that the judgment had been procured by fraud, perjury or other undue means upon the part of the defendant. *Nehr v. Dobbs,* 47 Neb. 863. The plaintiff in that case was convicted of having maliciously and unlawfully killed a certain dog belonging to Dobbs. Upon error to this court the judgment was reversed and the cause ordered dismissed. The conviction in that case, as also the judgment in the injunction suit in question in this case, was the result of a mistake of law upon the part of the district court, but there is a distinction in the cases which is a very material and important one. In the *Nehr* case, Dobbs was aware that his dog had no collar, and the statutes expressly provided: "It shall be lawful for any person to kill any dog found running at large on whose neck there is no collar as aforesaid, and no action shall be

maintained for such killing." Comp. St. ch. 4, art. I, sec. 20. The question before the trial court in that case was a mixed one of law and fact; while in the injunction suit in question herein there was no question of fact involved. the matter presented for determination was simply whether the law authorizing the purchase of the statutes was unconstitutional. This was purely a question of law, upon which the best legal minds might reasonably differ, and we are convinced from a consideration of the legal question involved, that there was room for an honest belief on the part of a reasonable man that the law authorizing the purchase of the statutes from the plaintiff herein was unconstitutional, and therefore there existed probable cause for the bringing of the injunction suit. The plaintiff argues, however, that there cannot be probable cause when the action is groundless, and the motive prompting the bringing of the action is bad or malicious. He concedes that defendant Stonebraker had a right to apply to the court for the *bona fide* purpose of settling the question of the constitutionality of the law, but asserts that, if he did not honestly believe that the law was unconstitutional, and did not bring the suit solely for the purpose of settling that question, but for the malicious purpose of injuring the plaintiff, then there was probable cause. This position assumes that the action was groundless, which is the very point in dispute, and, further, it confuses the question of malice with that of want of probable cause. If the defendant had probable cause for bringing the action, his motive was immaterial. If probable cause existed he had a legal right to maintain the action, and ordinarily, when a legal right is exercised, the motive with which it is done cannot and does not make it illegal. Stonebraker had the legal right, as a taxpayer, to enjoin the payment of state money to Cobbey under an unconstitutional statute, and his act in attempting to prevent the unlawful expenditure of state funds was, ostensibly at least, for a laudable purpose. If the suit had been brought by any other taxpayer, there would have been, as we have seen,

probable cause for its prosecution; and the fact that it was brought by Stonebraker who, it is alleged, acted from an evil motive, does not make that unlawful in him which was lawful if done by another.

Experience shows that, perhaps in a majority of the cases where taxpayers have sought to prevent the expenditure of public funds, pure philanthropy and an unselfish public spirit was not the sole motive which prompted the act, and no court, so far as we are aware, has ever dismissed such a case for the reason that the plaintiff's motives were not entirely altruistic and disinterested. If this might be done, the time of the courts would be taken up in attempting to ascertain the hidden motives of the parties, rather than the real merits of the controversy between them. *Jacobson v. Boening*, 48 Neb. 80; *Letts v. Kessler*, 54 Ohio St. 73; 1 Cyc. 669. In *Stewart v. Sonneborn*, 98 U. S. 187, it is said that it is well established that, unless malice and want of probable cause concur, no damages can be recovered. However blameworthy the prosecutor's motives, he cannot be cast in damages if there was probable cause for the complaint he made. The allegations of the petition that Stonebraker's motives in bringing the injunction suit were to prevent the sale of Cobbey's Statutes, and enhance the sale of a rival publication in which he was interested, tended to show that the action was begun with intent to injure the plaintiff herein without just cause or excuse, and, hence, would be malicious; but, since both malice and want of probable cause must exist, and one of these essential elements is lacking, the petition is defective and fails to state a cause of action against him for malicious prosecution.

The plaintiff claims, however, that the petition states a cause of action against the defendants for combining and conspiring to injure and destroy his business and prevent competition in the manufacture and sale of the statutes of this state. As we have seen, the petition charges that the defendant corporations, who are owners of a newspaper, are jointly interested with the defendants

Stonebraker, Traphagen and Wheeler in the publication
and sale of a compilation of the statutes of Nebraska,
known as the "Compiled Statutes," and that in pursu-
ance of a combination and conspiracy between them they
brought an action to restrain the purchase by the state
of Nebraska of 500 sets of statutes from the plaintiff
for the sum of $1,500; that the defendants had failed
in having the legislature appropriate money for the pur-
pose of purchasing the Compiled Statutes, as had been
done by former legislatures; and that, after the plain-
tiff had expended large sums of money in the preparation
of the manuscript and the printing of his statutes, they
began this action for the purpose of hindering and delay-
ing the plaintiff in the publication thereof, discrediting
the same in the eyes of the public, preventing its sale, and
in order to enhance the sales of the Compiled Statutes.
It was further charged that, for the purpose of bringing
the plaintiff's statutes into discredit and disrepute among
the attorneys and people of the state, the defendants pub-
lished and caused to be published in the Nebraska State
Journal numerous articles, under glaring headlines, re-
flecting on the plaintiff and his work done in the prepar-
ation of his said statutes, an article alleging that said
statutes prepared by the plaintiff were not authorized by
the legislature, and said act was passed by the legislature
in order that the individual members thereof might get
statutes for nothing, and wrongfully published and adver-
tised that their Compiled Statutes was the authorized
compilation of the statutes of the state of Nebraska, thus
representing to intending purchasers that plaintiff had
been enjoined from publishing his statutes, and it could
not and would not be published and orders given for
plaintiff's statutes could not and would not be filled; that
by reason of said acts the sale of plaintiff's statutes has
been largely discredited, and in a great measure prevented,
and the defendants have thereby largely increased the
sale of said Compiled Statutes of Nebraska published by
them.

The petition, in effect, charges a combination by the defendants to injure the plaintiff's business by bringing a vexatious suit and preventing the sale of a large number of copies of his statutes, and by slandering his work and circulating false statements as to the value, authority and usefulness thereof. It will be observed, however, that all of the matter above set out is pleaded by way of inducement, or by way of aggravation in order to increase the plaintiff's damages, which he alleges he has sustained by reason of the alleged malicious prosecution of the civil suit. And it seems clear, if we eliminate that cause of action, the matters so pleaded by way of inducement and aggravation fall of their own weight, and are not sufficient to constitute a cause of action for conspiracy.

Again, in order to state a cause of action for conspiracy to injure the plaintiff's business, there must be in connection with, and in addition to, the foregoing general statement, allegations or statements of facts from which, if established, the law will imply such a conspiracy or combination. The defendants were together engaged in preparing and publishing a rival statute. This, of course, of itself was not unlawful. It was the very thing that the law encourages as competition in business, and if the combination and conspiracy of the defendants was to publish a more acceptable statute than that published by the plaintiff, and so supply the demand, such an agreement and conspiracy, instead of being unlawful, would be in every way lawful and commendable. Therefore, in order to state a cause of action against the defendants, it was necessary to allege some overt act on their part intended to injure the plaintiff's business, and not reasonably appropriate and adapted to legitimately building up their own business. The fact that the defendants had failed in having the legislature appropriate money for the purpose of purchasing their statutes, and that the plaintiff had expended large sums of money in the preparation of manuscripts and the printing of his statutes, would not of

course, justify the charge against the defendants that they began the action complained of for the purpose of hindering and delaying the plaintiff in the publication of his statutes, or for the purpose of discrediting his statutes in the eyes of the public, and preventing its sale in order to enhance the sale of the Compiled Statutes.

The first overt act charged against the defendants is that, for the purpose of bringing plaintiff's statutes into discredit and disrepute among the attorneys and people of the state, the defendants published, and caused to be published, in the Nebraska State Journal numerous articles, under glaring headlines, reflecting upon this plaintiff and his work done in the preparation of his statutes. This is not an allegation of any wrong done on the part of the defendants. If they published true statements in regard to the quality of their statutes and of the plaintiff's work done in the preparation of his statutes, and did so for the purpose of enhancing the sales of their statutes by giving correct information in regard to the value of their respective works to the purchaser, then their action would be commendable, and certainly would be legitimate as a means of increasing their business.

The second overt act alleged is that the legislature was moved by unworthy motives to pass the act authorizing the purchase of plaintiff's statutes. The plaintiff construes this to be a charge of bribery against himself, and, if such construction is correct, it would reflect upon his character generally, and thus might indirectly injure the sale of his statutes. This allegation would be appropriate in an action for libel in which the plaintiff was seeking to recover damages for injury to his reputation, but such injury to the business of publishing his statutes as might be caused by such insinuation against him is too remote to be capable of being estimated with such accuracy as to form the basis of a judgment for damages.

Again, the publishing of such a statement was equally consistent with the honest belief in its truth and a justifiable desire on the part of the defendants to promote their

own business. The representation that the plaintiff had been enjoined from publishing his statutes was based upon the fact that the purchase of his statutes by the state had been enjoined, which was literally true, and there was just ground to suppose, at that time, that the injunction would be made perpetual. So far as anything alleged in the petition shows, the defendants might well believe that the plaintiff's statutes could not be, and would not be, published, and that orders given therefor would not be filled. So that this statement furnished no indication that the defendants were conspiring to maliciously injure the plaintiff's business. On the other hand, they were entirely consistent with the just desire to promote their own business by legitimate means.

As above stated, the gist of this action was to recover damages from the defendant for the malicious prosecution of a civil action. This supposed cause of action having failed, the court ought not to find that another and different cause of action was alleged in the petition, because of fugitive statements, appropriate, as they were, to the main cause of action, unless those statements contain such allegations of fact as to clearly present a legal ground for the recovery of damages. The general rule is that the allegations of a pleading are to be taken most strongly against the pleader. This is a wholesome and necessary rule. One who states a cause of action or defense is supposed to state all of the facts that are favorable to his claim, and state them in the most favorable light. Nothing, therefore, ought to be taken in his favor by implication; and, tested by this rule, the petition fails to state a cause of action for a conspiracy. The defendant Stonebraker's objection to the jurisdiction was therefore properly sustained.

For the foregoing reasons, our former judgment is reversed and the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

LETTON, J.

The foregoing opinion expresses my ideas upon the question of whether a cause of action is stated for malicious prosecution, but runs counter to my views upon the question whether the petition states a cause of action for malicious injury to business. In effect, the petition charges a combination of the defendants to injure the plaintiff's business by beginning a vexatious suit, by slandering his work and circulating false statements as to the value, authority and usefulness of the plaintiff's compilation of statutes, by stating it would not, and could not, be published, and that they thereby prevented the sale of a large number of the books to intending purchasers. While it is often difficult to draw the line between injuries to business caused by legitimate competition, which are not actionable, and cases in which the means employed to increase one's own business and to interfere with the rights of a competitor, and injure and damage his business, are wrongful and actionable, still it seems to me that the allegations in this petition, while general and not very definite in their nature, if proved, are sufficient to constitute a cause of action.

The necessity of a free field for business enterprise permits of interfering with the business of another by a competitor selling goods at a lower price, or by advertising the merits of a rival's wares and merchandise, or by seeking to add attractiveness and desirability to the goods one sells over those of his business rival, or by praising his own wares and comparing them with those of his competitor to the disadvantage of the latter, and in many other ways, but there is a limit beyond which fair and legitimate competition and business enterprise may not go. A man's goods may be slandered as well as his good name, and where the article which he has to sell derives its special value from the individual skill, experience and qualifications for its compilation of the editor or compiler, or from the fact of its having been authorized to be

used in the courts by the legislature, a serious wrong may be committed by false and damaging statements as to these particulars. In 1 Bacon, Abridgement, "Actions on the Case," p. 119, illustrations are given of actions on the case of a nature similar to this: "If A, being a mason and using to sell stones, is possessed of a certain stonepit, and B, intending to discredit it, and deprive him of the profits of the said mine, imposes so great threats upon his workmen, and disturbs all comers, threatening to maim and vex them with suits if they buy any stones, so that some desist from working and others from buying, etc., A shall have an *action upon the case* against B, for the profit of his mine is thereby impaired." "If a man discharges guns near my decoy pond with design to damnify me by frightening away the wild fowl resorting thereto, and the wild fowl are thereby frightened away, and I am damnified, an action on the case lies against him." *Carrington v. Taylor*, 11 East, 571. The latter principle was established in the case of *Keeble v. Hickeringill* (11 East, 574, note), where it was said by Lord Holt: "Where a violent or malicious act is done to a man's occupation, profession, or way of getting a livelihood; there an action lies in all cases. But if a man doth him damage by using the same employment; as if Mr. Hickeringill had set up another decoy on his own ground near the plaintiff's, and that had spoiled the custom of the plaintiff, no action would lie, because he had as much liberty to make and use a decoy as the plaintiff. This is like the case of 11 Henry IV, p. 47. One schoolmaster sets up a new school to the damage of an ancient school, and thereby the scholars are allured from the old school to come to his new. (The action there was held not to lie.) But suppose Mr. Hickeringill should lie in the way with his guns, and fright the boys from going to school and their parents would not let them go thither, sure that schoolmaster might have an action for the loss of his scholars."

In this case the charge is that by the bringing of the

lawsuit and by the use of the false statements in the newspapers of the defendants, the worth of the plaintiff's edition of the statutes was discredited, and attorneys and officers who would have purchased plaintiff's statutes were prevented from so doing by the fear that they were unauthorized and of little value. In a Texas case, *Brown v. American Freehold Land Mortgage Co.*, 97 Tex. 599, 80 S. W. 985, it was charged that the defendants procured a certain loan company for whom the plaintiffs had been agents to take the business agency in Texas away from the plaintiffs by making false and malicious representations as to the management of its business by the plaintiffs, and had prevented their continuing their business with a large number of other clients by publishing false statements and reports that the plaintiffs were insolvent and unable to accomodate their customers, and by other undue means, the petition alleging with great particularity many acts performed by the defendants for the purpose of accomplishing their end. The court held this petition to state a cause of action, and in this connection quoted from *Walker v. Cronin*, 107 Mass. 555, as follows: "Every one has a right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from a malicious and wanton interference, disturbance or annoyance. If disturbance or loss come as a result of competition, or the exercise of like rights by others, it is *damnum absque injuria*, unless some superior right by contract or otherwise is interfered with. But if it come from the merely wanton or malicious acts of others, without the justification of competition or the service of any interest or lawful purpose, it then stands upon a different footing."

*Wildee v. McKee*, 111 Pa. St. 335, was an action for conspiracy to defame and injure a person in his business. The plaintiff was a school teacher and it was charged that the defendants, maliciously intending to injure him in his good name, and in his business and profession,

did unlawfully combine and form themselves into a conspiracy to defame, and that they did publish certain scandalous words charging that he was incapacitated for his business on account of insanity and monomania. This was followed by an averment of special damages. The court held that the petition stated a cause of action, reversing the lower court.

In *Smith v. Nippert*, 76 Wis. 86, 44 N. W. 846, the petition charged a malicious conspiracy to injure the plaintiff's business as dressmaker and seamstress by suing out an inquisition of lunacy against her, and by causing it to be believed that she was insane, and not a proper person to be employed in the household where she had formerly found employment. The court held that the petition stated a good cause of action for an injury to the plaintiff's reputation and business. *Farley v. Peebles*, 50 Neb. 723; *Hartnett v. Plumbers' Supply Ass'n*, 169 Mass. 229, 38 L. R. A. 194; *Delz v. Winfree, Norman & Pearson*, 80 Tex. 400, 26 Am. St. Rep. 755; *Van Horn v. Van Horn*, 52 N. J. Law, · 284; *Kimball v. Harman* 34 Md. 407; *Buffalo Lubricating Oil Co. v. Everest*, 30 Hun (N.Y.), 587; *Doremus v. Hennissy*, 62 Ill. App. 391, which is an instructive case. See, also, a full discussion of the law upon this subject, as affected by *Allen v. Flood*, L. R. App. Cas. (1898) 1, and *Mogul S. S. Co. v. McGregor*, 23 L. R. Q. B. Div. 598, and L. R. App. Cas. (1892) 25, by the supreme court of Wisconsin in *State v. Huegin*, 110 Wis. 189. In *Quinn v. Leathem*, L. R. App. Cas. (1901) 495, which is a very interesting case, it is pointed out that *Allen v. Flood*, *supra*, has been misunderstood and that the doctrine of the common law as to combinations to injure a man's business has not been changed by that decision, as the Wisconsin court assumes, but is still adhered to by the English courts. See, also, *Temperton v. Russell*, 1 L. R. Q. B. Div. (1893) 715.

The petition alleges facts of a nature which do not constitute lawful competition. It charges the malicious interference with and injury to the plaintiff's business

by reason of malicious acts on the part of the defendant Stonebraker, in combination and conspiracy with the other defendants. The allegations are stated in general terms, are not properly separated from the cause of action for malicious prosecution, but, while lacking in particularity, are not assailed for that reason, and, in my opinion, are sufficient to state a cause of action.