JOHN KERSENBROCK, APPELLANT, v. SECURITY STATE BANK OF OSMOND ET AL., APPELLEES.

FILED JANUARY 16, 1931. No. 27487.

M. F. *Harrington* and *George M. Harrington,* for appellant.

*M. H. Leamy, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ.

GOSS, C. J.

Plaintiff appeals from a judgment dismissing his cause of action against the defendants for malicious prosecution. On October 31, 1927, the defendant, Joseph Cizek, who was president and managing officer of the defendant bank, signed a complaint in the county court charging Kersenbrock and two others with stealing 12 hogs belonging to the bank. Kersenbrock was bound over to the district court, was tried, and was acquitted. He sued herein for damages. No question has been raised as to the pleadings. At the conclusion of all the evidence the defendants moved for a directed verdict in their favor. This was granted, and the record shows such a verdict, shows the filing of a motion for new trial, the overruling thereof, and a judgment of dismissal at plaintiff's costs.

The briefs of plaintiff appellant, contain no distinct and definite assignment of errors. The text states in effect

that the court erred in deciding that the defendant was protected because there was probable cause justifying the complaint against Kersenbrock; the plaintiff contending that this was a question of fact for the jury.

The following things are established by uncontradicted evidence. The hogs belonged to the defendant bank and the defendant Cizek was the president and managing officer of the bank. The hogs were on a farm owned by Cizek and occupied by Walter H. Hauswirth, about a mile east and a mile and a half south of Plainview. The morning of October 25, 1927, Hauswirth telephoned Cizek these hogs were missing and had been taken the night before. Cizek went out to the farm that morning and found the 12 hogs were missing; "found automobile tracks, the imprint of a Diamond tread tire," followed the tracks from that point to the highway and a mile and a half north to highway No. 20, and from there followed them two miles east until they were lost, and there were tracks also going west with the same tread; investigated without success different trucks, doing a hauling business, to see what kind of tires they had; about 4 o'clock that afternoon a man informed him a truck had been standing near Moeller's place, about a mile and a half north and a mile east of Hauswirth's, the evening before; went with that informant to Moeller's place and found the identical tracks of the truck where informant had seen the truck parked. Mr. Moeller stated he had gone out with a lantern the night before to aid a doctor whose car had stalled about a hundred yards west of his place the night before and, after he got him fixed up, this truck was standing on the corner north. The doctor drove up, stopped near the truck and threw his lights on it, thinking perhaps the truck was in some trouble. Moeller stopped also with his lantern. The driver was questioned by Moeller "about where he was going and he said he was going to Sioux City after some calves for somebody at O'Neill, but when the truck left his place it evidently went east only another mile;" so, about 10 o'clock that night, the brother of defendant left for O'Neill, returned about 10 the next morning and re-

ported he found the same tracks at the stock-yards at O'Neill that same morning, that Mr. Preuss had bought from John Kersenbrock 12 hogs that morning, but, as the brother did not know the hogs, he came home to report. Cizek went up the following day with a witness and found that Jim Connolly had bought the hogs, had them on his farm, was told they belonged to the bank, and agreed to keep them for the time being. Then Cizek went to O'Neill and talked to Kersenbrock, who told him Hauswirth had told him to come and get the hogs. Cizek told Kersenbrock he would see Hauswirth the next morning, and if he denied Kersenbrock's story the witness would ask Kersenbrock to come down so Kersenbrock and Hauswirth could "thresh it out." The next day, Sunday forenoon, he called Kersenbrock, who said he would be down. Instead of coming his attorney telephoned and asked Cizek to come to O'Neill on Monday morning. After some negotiations it was arranged for Kersenbrock and Hauswirth to be brought together in the bank at Osmond, on Monday. They met there. Cizek, Kersenbrock with one of his attorneys, and Hauswirth were present. Kersenbrock stated that Hauswirth told him to get the hogs. "And Hauswirth got on his feet and called him a damned liar and they both got up and that settled it. That is as far as the discussion went between them as to who was the guilty one of getting the hogs." Both Hauswirth and Kersenbrock left the room. That was on the 31st day of October, 1927. Cizek then went down to see the county attorney, to whom he had talked about a week earlier, before he had located the hogs or learned who took them. He told the county attorney all the facts above narrated and, under the county attorney's advice, a complaint was signed by Cizek, and on that day filed in the county court, charging Hauswirth, Kersenbrock, and John Abbott with stealing the 12 hogs belonging to the bank. Abbott was Kersenbrock's trucker, who had taken his truck and had accompanied Kersenbrock, who drove his own car, and had taken the hogs from the Hauswirth place. The county attorney had advised that, inasmuch as Kersenbrock contended one way

and Hauswirth the other, "the best thing to do would be to file a complaint against all three because it was almost certain that some one of the three had stolen his hogs." This is the only complaint Cizek signed, though an amended complaint was made in the county court a week or so later and sworn to by the county attorney, containing another count against Kersenbrock, charging him with receiving stolen hogs, knowing them to have been stolen. Kersenbrock and Abbott were bound over to the district court and informed against on the charge of stealing the hogs and in due time Kersenbrock was tried and acquitted. O'Neill is west of Plainview. The Diamond truck marks were traced east of any point necessary to reach in going from Hauswirth's to O'Neill.

In *Bechel v. Pacific Express Co.*, 65 Neb. 826, a suit for malicious prosecution, "the chief question raised," says Pound, C., "is whether there was probable cause for the prosecution. * * * The question now is not whether he was guilty, but whether those who charged him with the offense which had undoubtedly been committed, at the time and under all the circumstances, had probable cause to believe him guilty. * * * Whether the facts adduced to that end show or fail to show want of probable cause, is a question for the court. If there is sufficient in undisputed evidence to show probable cause for the prosecution, the trial court should direct a verdict for the defendant. *Dreyfus v. Aul*, 29 Neb. 191; *Turner v. O'Brien*, 11 Neb. 108. It cannot matter that some or many of the facts bearing on the issue as to probable cause are in dispute, if there are still enough established and undisputed to determine the question in point of law. The facts being determined, the question is one for the court; and if there are enough on which to base a determination without leaving anything that may be in dispute to the jury, there is nothing for the jury to pass upon. We are unanimously of opinion that such is the situation in the case at bar."

That case is cited by Judge Rose in *McHugh v. Ridgell*, 105 Neb. 212, as stating the law correctly. We quote:

"Whether facts and circumstances established by uncontradicted evidence amount to probable cause for a criminal prosecution is a question of law for the court, and not an issue of fact for the jury. This is not only the law of Nebraska, but is a generally accepted rule. *Turner v. O'Brien*, 5 Neb. 542; *Dreyfus v. Aul*, 29 Neb. 191; *Nehr v. Dobbs*, 47 Neb. 863; *Bechel v. Pacific Express Co.*, 65 Neb. 826; *Bank of Miller v. Richmon*, 68 Neb. 731; *Clark v. Folkers*, 1 Neb. (Unof.) 96; and other cases cited in note in L. R. A. 1915D, 5, 8 (*Michael v. Matson*, 81 Kan. 360). The principle of law applicable has been stated in this form:

" 'In an action for malicious prosecution where there is sufficient undisputed evidence to show probable cause, the trial court should direct a verdict for the defendant.' *Bechel v. Pacific Express Co.*, 65 Neb. 826."

To the same effect, see 18 R. C. L. 58, sec. 39, and 38 C. J. 504, sec. 194.

"As a general rule, the test as to whether or not probable cause for instituting a criminal prosecution existed is to be applied to the facts and circumstances as they existed at the time the prosecution was commenced." 38 C. J. 504, sec. 34.

It is true there was some evidence brought to Cizek's notice before he signed the complaint, which evidence, if believed, would indicate that Kersenbrock was not guilty and ought not to be prosecuted. Kersenbrock said he was authorized by Hauswirth to take the hogs. Cizek did not act until he brought the parties together and Hauswirth emphatically denied the statement. Moreover, Cizek had learned that Kersenbrock had taken the hogs away in the nighttime, when Hauswirth was absent, had taken them to a, salesyard and, later, had sold them, although they were under weight, instead of taking them to his own yards; and Cizek believed it a suspicious circumstance that Kersenbrock immediately sold the hogs for 10 cents a pound, whereas a day or two later Cizek sold those that were left at 14½ cents a pound. Kersenbrock admitted on cross-examination that his buyer sold the 12 hogs to Connolly for $15 a hundred. Without further analyzing the undisputed evidence, it is sufficient to say that it was such as to war-

rant one who was unprejudiced and of ordinary prudence and intelligence to believe that the defendant complained against was guilty of the crime which it is conceded had been committed by some one. There was, therefore, sufficient probable cause for the prosecution.

In a malicious prosecution case, the necessary elements for the plaintiff to establish are: (1) The commencement or prosecution of the proceeding against him; (2) its legal causation by the present defendant; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage, conforming to legal standards, resulting to plaintiff. If any one of these elements is lacking, the result is fatal to the action. 38 C. J. 386, sec. 5. When, as here, the plaintiff has failed to establish that there was no probable cause for the complaint against him and for the prosecution thereof, his cause of action for malicious prosecution fails. *Cobbey v. State Journal Co.,* 77 Neb. 626, and cases there cited. This renders it unnecessary for us to go into the element of malice and other matters discussed in the briefs.

The rules invoked by the defendant and applied by the district court are founded upon a great public policy. They are essential to the welfare of organized society and to the orderly processes of government. Those who have knowledge relating to felonies should not be made to fear that a disclosure to officers, whose duty it is to enforce the law by prosecution of offenders, may result in mulcting the informer in damages, if perchance this information or a complaint by the informer based thereon may not result in the conviction of the defendant. A complainant is not a guarantor of the conviction of one complained of. The undisputed facts reported by the defendant to the county attorney and made the basis of the prosecution of plaintiff, as shown by the evidence in this case, raised a question of law to be decided by the court, and not an issue of fact to be submitted to the jury. In so deciding, the district court did not err.

For the reasons stated, the judgment of the district court is                                                          AFFIRMED.