FELIX BRONNENKANT, APPELLANT, v. LOUIS B. KUCERA ET AL., APPELLEES.

3 N. W. (2d) 913

FILED MAY 8, 1942.   No. 31246.

*Herbert W. Baird, J. A. Hayward* and *Homer Kyle*, for appellant.

*Rinaker, Delehant & Hevelone* and *Hall, Cline & Williams, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

In this action plaintiff seeks to recover damages for malicious prosecution as a result of his having been committed

to the state hospital as insane. At the conclusion of plaintiff's case in chief, the defendants each moved for a directed verdict. The trial court sustained the motions. Plaintiff filed a motion for a new trial which was overruled. He appeals to this court assigning as error the directing of the verdict and the overruling of the motion for a new trial.

During the consideration of the motions for a directed verdict, the trial court stated that, from the opening statements and the reading of the petition, he had proceeded on the theory that the action was one for false imprisonment. He then stated that the plaintiff's attorney "now informs the court that this is not an action for false imprisonment but wholly for malicious prosecution," and that the question to be determined was whether or not evidence had been introduced sufficient to take the case to the jury on the question of want of probable cause. In his motion for a new trial plaintiff said: "The court erred in trying said cause on the theory that plaintiff's cause of action was an action for false imprisonment whereas it was * * * an action based on malicious prosecution."

Plaintiff now seeks to have this court consider the cause as one for false imprisonment and thereby to present the question of the legality of the proceedings by which plaintiff was committed. Plaintiff, and not the trial court, elected to construe his pleadings and his cause as one for malicious prosecution. He cannot now be heard to state that it is an action for false imprisonment nor have it so considered. "It has long been the established rule of this court that the parties will be restricted to the same theory upon which the case was prosecuted or defended in the trial court." *Kimball v. Lincoln Theatre Corporation*, 129 Neb. 446, 261 N. W. 842. This court has said: "In a malicious prosecution case, the necessary elements for the plaintiff to establish are: * * * (4) the absence of probable cause for such proceeding. * * * If any one of these elements is lacking, the result is fatal to the action." *Kersenbrock v. Security State Bank*, 120 Neb. 561, 234 N. W. 419. "Want of probable cause is an indispensable element of an action for malicious prose-

cution." *Clausen v. Omaha Loan & Bldg. Ass'n,* 131 Neb. 666, 269 N. W. 517.

This court has held: "While some of the facts supporting probable cause were disputed by evidence on behalf of plaintiff, yet there were others undisputed upon which the defense of probable cause might be predicated. In such circumstances we have held that the question of probable cause is one of law for the court. 'In an action for malicious prosecution where there is sufficient undisputed evidence to show probable cause, the trial court should direct a verdict for the defendant.' *Bechel v. Pacific Express Co.,* 65 Neb. 826, 91 N. W. 853, by Pound, C.; *McHugh v. Ridgell,* 105 Neb. 212, 180 N. W. 75; *Kersenbrock v. Security State Bank,* 120 Neb. 561, 234 N. W. 419." *Clausen v. Omaha Loan & Bldg. Ass'n, supra.* "It cannot matter that some or many of the facts bearing on the issue as to probable cause are in dispute, if there are still enough established and undisputed to determine the question in point of law." *Bechel v. Pacific Express Co.,* 65 Neb. 826, 91 N. W. 853. The test as to whether or not there was probable cause is to be determined in the light of facts and circumstances as they existed and were known at the time the prosecution was commenced and not from the viewpoint of subsequently appearing facts. 34 Am. Jur. 731, sec. 47, 784, sec. 140, 790, sec. 153; 38 C. J. 405. Paraphrasing the language of Commissioner Pound in *Bechel v. Pacific Express Co., supra,* the question now is not whether plaintiff was insane, but whether those who charged him with being insane *at the time* and under the circumstances did not have probable cause to believe him insane.

Did the plaintiff submit evidence sufficient to take the case to the jury on that issue, or was the question one of law to be determined by the court?

This litigation arose as a result of plaintiff having been found to be insane by the Board of Commissioners of Insanity (hereinafter called the Board) and committed to the State Hospital for the Insane. It appears that on or about August 23, 1935, a lawyer called the clerk of the district court, ex-officio a member of the Board, and asked if he

would arrange a meeting of the Board the following day to consider a charge against the plaintiff for dipsomania. He asked that it be conducted at the place of residence of the plaintiff. The meeting was arranged and the following day the three members of the Board appeared at the home to conduct the hearing. The evidence indicates that the defendants were all present. The plaintiff was called before the Board and questioned and excused.

The medical member of the Board, during the hearing, formed the opinion that the plaintiff was insane and advised that an affidavit of insanity be filed and hearing had. The clerk prepared the affidavit and the defendant Engel executed it and the hearing proceeded thereon. Plaintiff was recalled and questioned. The defendants Engel, Coleman, Barnes, and Hayes testified, as well as two other witnesses, during some part of this proceeding. The physician's return showed that the plaintiff was in poor health physically; that he had the delusion that he was being persecuted; that this delusion was "increasing;" that he had threatened to injure himself; and that from information obtained from witnesses and plaintiff and from her observation of plaintiff she found him to be insane. Plaintiff was thereafter committed to the state hospital and held and treated until released by habeas corpus proceedings on November 10, 1938. Defendant Griffith was superintendent of the hospital.

The evidence furnished by the plaintiff in this action does not disclose what evidence was offered to the Board at the time of the commitment. It discloses only a summary of what the physician reported as the result of her examination upon which, in part, she based her finding that the plaintiff was insane. The record further discloses that it was known to at least a part of the defendants at the time of and prior to the hearing that the plaintiff was ill physically and mentally; that he had at times, over a period of years, used intoxicants to the extent that he had caused scandal to his church and had been disciplined by his superiors; that he had been removed from and denied pastorates because of his conduct and condition; and that as a result thereof had the

fixed delusion, described as a paranoia, that his superiors were persecuting him and denying him advancement and service in his church. It further appears from plaintiff's own testimony in this action that he went through those two appearances before the Board without any rational comprehension of what was taking place or of the nature of the hearing or the matters investigated and without making inquiry as to the purpose of the investigation. His actions and demeanor and mental condition were observable by the Board.

It further appears from the evidence given at the trial in May, 1940, that the plaintiff at that time (1940) disputed some of the facts appearing on the physician's return. There is no evidence that those facts were questioned at the hearing before the Board in August, 1935, nor that they weighed, in a controlling way, in the determination made by the Board. Plaintiff also produced an expert witness who examined the plaintiff in 1938, studied his history and gave it as his opinion that the plaintiff was sane in 1935. However, this is an opinion formed following an examination made three years after the commitment and obviously not formed or known in August, 1935. Further, this witness stated that others, knowing the same facts, might rationally and reasonably reach the conclusion that plaintiff was insane in 1935.

As we read this record, the trial court reached the only conclusion the evidence sustains, i. e., the plaintiff not only failed to show absence of probable cause, but proved that probable cause existed.

The judgment of the trial court is

AFFIRMED.