LEONARD BREWER, APPELLANT, v. PAUL W. FISCHER,
APPELLEE.

14 N. W. 2d 315

FILED MAY 5, 1944.   No. 31772.

*Hubka & Hubka,* for appellant.

*Jack & Vette, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

PAINE, J.

This is an action to recover damages for malicious prosecution. At the close of all the evidence, the court sustained the motion of the defendant, discharged the jury, and dismissed the petition, from which plaintiff appeals.

The petition alleged that on August 10, 1942, the defendant falsely and maliciously, and without reasonable and probable cause, made complaint against plaintiff to the county attorney, and signed a formal and written complaint before a justice of the peace, who thereupon issued a warrant for the arrest of the plaintiff.

The complaint charged that the plaintiff had issued a check for the payment of money upon the Wymore National Bank in the sum of $10.50, knowing that he had not sufficient funds in, or credit with, the bank for the payment of

the check, and with the intent of unlawfully defrauding Paul W. Fischer by obtaining merchandise of the value of $10.50, contrary to the form of the statutes in such case made and provided.

Upon said complaint a warrant was duly issued, and he was placed under arrest by the deputy sheriff of Gage county on August 11, 1942, all against the will of the plaintiff, who claims that the same caused him much embarrassment and mental suffering, that he has been greatly injured in his credit and reputation and brought into public scandal, infamy and disgrace, and has suffered anxiety and pain of body and mind, and has been forced to expend the sum of $100 in procuring his discharge from imprisonment and defending himself therefrom, and has lost several days of working time.

To this petition the defendant filed an amended answer, alleging that a man, who said his name was Leonard Brewer, gave him said check in payment for merchandise; that the check was returned to him by the bank, marked "No account with us;" that he recited all the facts to Dean Sackett, acting county attorney, and pursuant to his direction he caused the check to be protested, and later signed a complaint prepared by the acting county attorney, who was in charge of all prosecutions in criminal matters in Gage county, and that all of his acts were done because this defendant believed there was probable cause that an offense had been committed against the laws of Nebraska by Leonard Brewer, and that defendant acted in good faith and under the advice and direction of the acting county attorney; that defendant has now been informed and believes that the plaintiff who was arrested is not the person who executed the worthless check, and that defendant in no way pointed out plaintiff to the sheriff as the one who made the check, and denies all other allegations of the petition. The reply was a general denial.

Upon the case going to trial before a jury, the evidence disclosed that the defendant signed the complaint as charged, that on the same day a state warrant was issued,

that the plaintiff was arrested the next day at Wymore and brought to Beatrice and placed in the county jail, and that this complaint was not dismissed until November 18, 1942, by the state; that the same afternoon of his arrest the plaintiff was released to his attorney upon his personal guaranty to produce him when wanted.

The evidence further shows that the plaintiff had nothing whatever to do with the check, but that a man named Chester Hoefling was finally arrested and pleaded guilty to forging the name of Leonard Brewer, plaintiff, to the check in question.

The defendant testified that he had been in the harness business in Beatrice for some years, that he has no helper in the store; that a man came into his place of business, picked out a horse collar, and gave him this check for it; that the purchaser asked for a check on the Wymore National Bank, but as defendant had none he changed a Beatrice National Bank check, and wrote out the check; that the buyer was a stranger to the defendant. Defendant testified that he believed the man was Leonard Brewer, for that was the name signed to the check; that in a few days the check was returned, marked "No account with us," whereupon he inquired of several people where Leonard Brewer lived, and the W. P. A. informed him that he had been working for the W. P. A., but was not at that time. The witness testified that he then went to see the county attorney, who told him he could do nothing until he protested the check, and he had that done, and upon returning to the county attorney's office later a complaint was drawn up and signed by the defendant; that as soon as the plaintiff was arrested he employed Frank E. Crawford, an attorney, who came to the harness shop of the defendant and asked him to come to the courthouse. The defendant admits that he refused to go, because he had more work than he could get out that day. After a while, defendant testified, the deputy sheriff came and asked him to go to the county attorney's office, where he met the plaintiff and his wife and his attorney, whereupon Mr. Crawford and Mrs. Brewer were asked to leave

the room, and then the county attorney asked the defendant whether that was Mr. Brewer, and defendant says he told the county attorney, "I think he is a little shorter and maybe a little older than the man that gave me the check."

On cross-examination the defendant testified that he now knows that it was the man Hoefling who came to his place of business and signed the check, and it was not Leonard Brewer who had the transaction in his place on July 30, 1942. He also testifies that Hoefling had been there several weeks before and bought some snaps. The man who gave him the check told defendant he lived two miles north of Blue Springs. Defendant admits that he never went down to see if Leonard Brewer did live two miles north of Blue Springs, that he did not write any letter to Leonard Brewer, and made no effort to find him, except to make inquiry of several people, and sign the complaint before the county attorney.

Frank E. Crawford testified that he is an attorney, living at Wymore, Nebraska; that the plaintiff called him by telephone at night, and was greatly agitated and excited about a probable arrest; that the next morning between 9:00 and 9:30 he saw the plaintiff in the custody of the deputy sheriff, who brought him to his office, and he asked him to accompany them to Beatrice to act as his attorney; that he drove his car directly to Fischer's place of business in Beatrice, found him in the back room, introduced himself, told him that he was attorney for Mr. Brewer, whom he had known for 40 years, and he was a good, reputable citizen, and that he had not owned a team for 15 years and had no occasion to buy a horse collar, and insisted that defendant Fischer accompany him to the county attorney's office, which he refused to do; that he said to Mr. Fischer, "I am sure you (are) wrong in the man, and he has got a good job, for God's sake go up, look him over," and Fischer said, "No, I won't, I am not going to lock up my place of business" and finally Fischer became very angry and said, "To hell with him, tell him I will meet him in the courtroom," and Crawford left.

Dean R. Sackett testified that he was acting county attorney of Gage county; that when Mr. Fischer came over to his office to identify Mr. Brewer, who was under arrest by the deputy sheriff, Fischer requested Mr. Brewer to stand up, and then said, "It does look some like him, * * * I am not sure it is him;" that he told Mr. Fischer that he would have to identify Mr. Brewer positively as the man that gave him the check before he could proceed with any prosecution, and that Mr. Fischer said "he didn't think he could do so."

Mr. Sackett further testified, "I was fully convinced at the time Mr. Brewer left my office, * * * that he had not written this check and I was also satisfied that Mr. Fischer could not identify him as the man who had." He testified that the latter part of October Mr. Crawford telephoned him to bring Fischer down, that he had the man who had given the check, and that he filed complaint against Chester Hoefling, charging him with forgery.

At the close of all the evidence, the defendant moved the court to direct a verdict for the defendant for the reason that there was sufficient undisputed evidence to show probable cause to file the complaint which was filed; that the defendant related all the facts known to him fully to the county attorney and acted on his advice. After argument upon this motion, it was sustained by the court.

Among the assignments of error, we find these set out: Error in sustaining motion to dismiss the plaintiff's action and in not submitting it to a jury; error in overruling motion for new trial.

In the case of *Ross v. Langworthy*, 13 Neb. 492, 14 N. W. 515, this court states as follows: "Probable cause does not depend upon mere belief, however sincerely entertained. Because if that were so, any citizen would be liable to arrest and imprisonment without redress, whenever any person, prompted by malice, saw fit to swear that he believed the accused was guilty of the offense charged. The law, therefore, has imposed an additional ground, viz., such knowledge of facts as would induce a reasonable man to believe that the accused was guilty. Nothing short of this

will justify the institution of a criminal charge against another."

"(1) A private person who initiates criminal proceedings against another who is not guilty of the offense charged is liable to him for the harm done thereby if the proceedings (a) were initiated (i) without probable cause, * * * ." 3 Restatement, Torts, 382, sec. 653.

On the other hand, "Where there is sufficient undisputed evidence to show probable cause, the trial court should direct a verdict for the defendant. This rule applies even though some of the facts supporting probable cause were disputed by evidence on behalf of the plaintiff." *Bronnenkant v. Kucera*, 141 Neb. 408, 3 N. W. 2d 913. See, also, *Bechel v. Pacific Express Co.*, 65 Neb. 826, 91 N. W. 853; *Kersenbrock v. Security State Bank*, 120 Neb. 561, 234 N. W. 419.

"The test as to whether or not there was probable cause is to be determined in the light of facts and circumstances as they existed and were known at the time the prosecution was commenced and not from the viewpoint of subsequently appearing facts." *Bronnenkant v. Kucera, supra.*

"The failure of a person who has received information tending to show the commission of a crime to make such further inquiry or investigation as an ordinarily prudent man would have made in the same circumstances, before instituting a proceeding, renders him liable for proceeding without probable cause. * * * So, also, there is authority to the effect that to proceed without inquiry would be to act without probable cause where the information is readily obtainable, or where the accused himself points out sources of information which would establish his innocence." 34 Am. Jur. 735, sec. 51.

With these guides before us, and narrowing this case down to the question of fact whether defendant initiated the proceedings without probable cause, and without making such an investigation as an ordinarily prudent man would be required to make, let us examine the evidence.

A stranger came in and bought a horse collar and gave

defendant a forged check. He investigated just far enough to ascertain there was a man bearing that name who had worked for the W. P. A. He could easily have obtained his residence; he made no effort to contact him.

However the defendant did absolutely nothing in the way of making inquiry, such as a reasonable and prudent man should have done before having an entirely innocent man placed under arrest and in jail. The rule applicable is stated in *Clausen v. Omaha Loan & Bldg. Assn.*, 131 Neb. 666, 269 N. W. 517.

The important thing in the mind of the defendant appears, during this entire proceeding, not to vindicate the law, or punish a crime, but to force the payment of the amount due him for his horse collar. This court has held such a motive wrong. See *Ross v. Langworthy, supra.* The criminal case filed against the plaintiff was not dismissed until November 18, 1942.

"Mere belief of the defendant in plaintiff's guilt, however strong, sincere, and honest, will not constitute probable cause, unless founded on circumstances sufficient in reason to warrant it." *Eggett v. Allen*, 119 Wis. 625, 96 N. W. 803.

"Probable cause is a reasonable ground of suspicion, supported by facts and circumstances of such a nature as to justify a cautious and prudent person in believing that the accused was guilty." *Diers v. Mallon*, 46 Neb. 121, 64 N. W. 722.

"This court has said that where evidence if uncontradicted would support a verdict, it is the duty of the court to submit the case to the jury. 'It is not the function of the court to weigh the evidence for the purpose of saying how the verdict should go.' *Blackwell v. Omaha Athletic Club*, 123 Neb. 332; *Glarizio v. Davis*, 110 Neb. 679. It is the function of the jury to weigh the evidence, and not the prerogative of the court." *In re Estate of Hoagland*, 126 Neb. 377, 253 N. W. 416.

Ordinarily, the trial court should not take a case from the jury unless, as a matter of law, no recovery can be had upon any view which can properly be taken of the evidence.

We believe that in the case at bar there was very substantial evidence in support of the plaintiff's petition, and while reasonable men might differ on the facts proved, yet this case, in our opinion, presented a question for the jury.

As the case is to be retried, it will not be necessary to consider the other errors assigned by plaintiff. The cause is reversed.

REVERSED.